## JOLLIT et al. v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. December 7, 1922. Rehearing Denied January 13, 1923.)

### No. 3943.

1. **Conspiracy ⬤═43(5)—Indictment held to allege conspiracy antedating overt acts.**

An indictment alleging that on or about the 1st day of September, 1920, and continuously during the period from that date to January 3, 1921, the defendants conspired to conceal assets from a trustee in bankruptcy, and alleging overt acts as committed prior to the last-named date, is not objectionable as alleging overt acts which antedated the formation of the conspiracy.

2. **Conspiracy ⬤═43(11)—Indictment for conspiring to conceal assets need not allege adjudication in bankruptcy.**

An indictment charging a conspiracy to conceal assets from a trustee in bankruptcy need not allege an adjudication in bankruptcy.

3. **Conspiracy ⬤═43(11)—Indictment for conspiring to conceal assets need not allege existence of other assets or continuation of conspiracy after adjudication.**

An indictment under Criminal Code, § 37 (Comp. St. § 10201), for conspiracy to conceal assets from a trustee in bankruptcy, need not allege that there were other assets of the bankrupts in addition to those delivered to the trustee, or that the conspiracy was continued after adjudication in bankruptcy, which would be necessary only on the untenable theory that the conspiracy must be successful.

4. **Conspiracy ⬤═40—Others than bankrupts can be indicted for conspiring with bankrupts to conceal assets.**

Under Bankruptcy Act, § 29b (Comp. St. § 9613), making it an offense for bankrupts to conceal their assets, and Criminal Code, § 37 (Comp. St. § 10201), making it an offense to conspire to commit any offense against the laws of the United States, it was an offense for bankrupts to conspire to conceal their assets from their trustee, and others who conspired with them to effectuate that purpose can be indicted and convicted for conspiracy, though it was not an offense for them to conceal the assets of the bankrupts.

5. **Conspiracy ⬤═45—Exclusion of evidence grand jury knew what property was concealed held proper, in prosecution for conspiracy to conceal.**

In a prosecution for conspiracy to conceal assets from a trustee in bankruptcy, where the indictment alleged that the goods which the conspirators were to conceal were unknown to the grand jurors, it was proper to exclude evidence that the grand jury had a list of the goods which the bankrupts failed to turn over to their trustee, and which were subsequently discovered by the trustee, since it did not necessarily follow that those goods were the particular goods which the conspirators designed to conceal.

6. **Witnesses ⬤═277(2)—Evidence accused entertained witness, who was a stranger, is admissible.**

Where a witness called for the prosecution refused to testify, on the ground that his testimony might incriminate him, it was not error to permit the cross-examination of one of the defendants to show that he had entertained that witness at his home, although the witness was practically a stranger to him, since such cross-examination tended to show a willingness to suppress testimony.

7. **Criminal law ⬤═829(1)—Refusal of requested charge already given in substance is not error.**

It was not error for the court to refuse a charge requested by accused, the substance of which had already been given.

**8. Conspiracy ⬡⟶47—Evidence held sufficient to sustain conviction of each of four defendants for conspiring to conceal assets of bankrupts.**

In a prosecution against four defendants for conspiracy to conceal assets from the trustee in bankruptcy of two of the defendants, evidence that one of the defendants was the manager of the store belonging to both bankrupts, from which the goods were taken to be concealed, that another was the manager of a store in another town, but frequently visited the store from which the concealed goods were taken, that a third was an employee, who knew the goods were being packed and stored away in another's place of business, and that the fourth received goods which he knew belonged to the bankrupts, paid the draymen for hauling the goods, and sent some of them from his store to be shipped elsewhere, *held* sufficient to sustain conviction of all four defendants.

In Error to the District Court of the United States for the Southern Division of the Northern District of Alabama; William I. Grubb, Judge.

Mitchell Jollit and others were convicted of conspiracy to conceal assets from a trustee in bankruptcy, and they bring error. Affirmed.

D. G. Ewing, of Birmingham, Ala., for plaintiffs in error.

Jim C. Smith, Asst. U. S. Atty., of Birmingham, Ala.

Before WALKER, BRYAN, and KING, Circuit Judges.

BRYAN, Circuit Judge. The indictment in this case charges that Mitchell Jollit, Sam Jollit, Moses George, Sam Saliba, who were convicted and who have sued out this writ of error, and other defendants—

"heretofore, to wit, on or about the 1st day of September, A. D. 1920, and continuously during the period of time from the said 1st day of September, A. D. 1920, up to, to wit, on or about the 3d day of January, A. D. 1921," in the Northern district of Alabama, "did then and there unlawfully, knowingly, and feloniously conspire, combine, confederate, and agree together, with each other, and with divers other persons to. the grand jurors unknown, to commit the acts made offenses and crimes against the United States in violation of the National Bankruptcy Act, passed by Congress in 1898, as amended, and in violation of section 29 of said act, as amended; that is to say, the defendants did then and there unlawfully, knowingly, and feloniously conspire, combine, confederate, and agree together with each other, and with divers other persons to the grand jurors unknown, to unlawfully, knowingly, willfully, and fraudulently conceal, while the said Mitchell Jollit and Sam Jollit were bankrupts, and in contemplation of the said Mitchell Jollit and Sam Jollit becoming bankrupts, from the trustee of the bankrupt estate of the said Mitchell Jollit and Sam Jollit, certain property hereinafter more particularly described, said property belonging, as they well knew, to the estate of the said Mitchell Jollit and Sam Jollit, when they became bankrupts, in this: That at the time and place aforesaid it was understood and agreed by and between the defendants, and divers other persons to the grand jurors unknown, that the said Mitchell Jollit and Sam Jollit were to become bankrupts, and in contemplation of the said Mitchell Jollit and Sam. Jollit becoming bankrupts it was further understood and agreed by and between the said defendants and divers other persons to the grand jurors (unknown) that the defendants and divers other persons to the grand jurors unknown, would knowingly, unlawfully, willfully, and fraudulently conceal, while the said Mitchell Jollit and Sam Jollit were bankrupts, as aforesaid, from the trustee in bankruptcy of the estate of the said Mitchell Jollit and Sam. Jollit in bankruptcy, certain property belonging to said estate in bankruptcy, said property consisting of clothing, silk underwear, and furnishings, a further description of which said property being to the grand jurors unknown, of the value of, to wit, ten thousand dollars."

---

⬡⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The indictment further charges "that, in pursuance of said unlawful and felonious conspiracy, combination, confederation, and agreement aforesaid, and to effect the object of the same," certain overt acts were committed, among them being the filing by Mitchell Jollit and Sam Jollit of a voluntary petition in bankruptcy, and the removal of goods from their place of business to other places in Birmingham, and to Mobile and Fairfield, Ala.

Defendants demurred to the indictment upon the grounds: That the overt acts are alleged to antedate the conspiracy; that it is not alleged that Mitchell Jollit and Sam Jollit were adjudicated bankrupts, or that they had assets in addition to those voluntarily delivered by them to the trustee in bankruptcy, or that the conspiracy continued to exist after the adjudication of the bankrupts; that a conspiracy to commit an offense in violation of section 37 of the Criminal Code (Comp. St. § 10201) is not charged against the defendants George and Saliba, because, as it is contended, the concealment of assets of a bankrupt estate by others than the bankrupt does not constitute an offense against the Bankruptcy Act.

January 3, 1921, Mitchell Jollit and Sam Jollit were adjudicated bankrupts on their voluntary petition. The schedules filed by them disclosed assets amounting to $20,350, and liabilities of approximately $73,000. Prior to being adjudicated bankrupts, these two defendants had been engaged in business as dry goods merchants at Birmingham and Alexander City, Ala. The business at Birmingham was managed by Sam Jollit, and that at Alexander City by Mitchell Jollit, but the latter frequently visited the place of business at Birmingham. The bankrupts correctly listed in their schedule of assets all goods which the trustee found in their two stores; but in addition to the goods so listed the trustee after investigation, and without assistance or suggestion from the bankrupts, found and recovered other goods belonging to the bankrupt estate in a store of one Michael Bashara, at Fairfield, Ala., and in a warehouse at Mobile, Ala. The goods found at Fairfield were worth about $3,500, and the goods found at Mobile were worth about $5,400. In like manner, and also without assistance or suggestion from any of the defendants, the trustee found and recovered other goods packed in trunks and boxes at the store of the defendant Moses George in Birmingham. The parties found in possession of the goods did not claim them, but testified at the trial that they were received and stored in November and December, 1920, at the request of the defendant Sam Jollit. All of the goods which had been concealed came out of the store at Birmingham. The goods shipped to Mobile were consigned to A. K. Buckleh, one of the defendants, who pleaded guilty, and who testified that he was merely assisting the bankrupts in concealing their goods. He claims to have received part of the goods which were found at Fairfield.

Other evidence on behalf of the government tended to show participation by the defendants Mitchell Jollit, George, and Saliba. Buckleh testified that Mitchell Jollit admitted to him that he had shipped still other goods for the purpose of concealing them, and that Saliba stated to him the name of the party in another city to whom Mitchell Jollit had consigned goods. Buckleh further testified that he claimed the

goods at Mobile in pursuance of a plan agreed upon by Saliba, Mitchell Jollit, and Sam Jollit. Saliba kept books at the Birmingham store, was a brother-in-law of the defendant George, and was working at the store in Fairfield when the goods stored there were recovered by the trustee.

During the trial the court sustained an objection to evidence, the purpose of which was to show that the grand jury had before them, during their deliberations, and before the indictment was found, an accurate, detailed description of the goods which had been concealed.

One Moses Sliman was introduced as a witness by the government, but refused to testify upon the ground that he might incriminate himself. Thereafter the defendant Saliba testified in his own behalf, and on cross-examination was required, over his objection, to answer questions which elicited from him testimony to the effect that he had received a telegram from Sliman, whom he had only met casually on one occasion, met him at the depot, and entertained him from the time of his arrival until he refused to testify upon the trial of the case.

Each defendant moved the court to direct the jury to find him not guilty, but these motions were severally denied, and exceptions taken. In its charge to the jury the court fully protected the rights of the defendants, and instructed the jury to acquit any defendant who was not shown by the evidence to have participated in the conspiracy with guilty knowledge of its purpose, but refused a similar request made by the defendants. The court also refused to charge the jury to find Saliba not guilty, if they believed that none of the defendants committed an overt act in pursuance of the conspiracy after the adjudication in bankruptcy.

Error is assigned upon: (1) The order overruling the demurrer; (2) the refusal of the court to admit evidence to the effect that the grand jury had before it a detailed description of the goods which had been concealed and recovered by the trustee; (3) the overruling of objections to the questions which elicited from Saliba his relations with the witness Sliman; and (4) the refusal of the court to give the charges requested by the defendants.

[1] 1. The indictment is under section 37 of the Criminal Code. That section is violated by a conspiracy to commit an offense against the United States, whenever an overt act is committed to effect the object thereof. United States v. Hutto, 256 U. S. 524, 41 Sup. Ct. 541, 65 L. Ed. 1073. It is contended that the overt acts set out in the indictment antedated the conspiracy, upon the theory that the conspiracy was in its formative stage until January 3, 1921. It is true the overt acts pleaded and proved occurred in the year 1920, but it is apparent from a consideration of the indictment that the defendants were charged with having entered into the conspiracy in September, 1920, and with having continued it until January 3, 1921. The indictment therefore alleges that the conspiracy was formed before the overt acts were committed.

[2] It was not necessary to allege that Mitchell Jollit and Sam Jollit were ever adjudicated bankrupts. The conspiracy and overt acts under it constitute the crime charged. Goldman v. United States, 245

U. S. 474, 38 Sup. Ct. 166, 62 L. Ed. 410; Radin v. United States, 189 Fed. 568, 11 C. C. A. 6.

[3] Neither was it necessary to allege that there were other assets in addition to those which were listed by the bankrupts and delivered voluntarily to the trustee in bankruptcy, or that the conspiracy was continued after adjudication in bankruptcy. These criticisms of the indictment proceed upon the untenable theory that it is essential to allege that the conspiracy was successful. But unsuccessful conspiracies are punishable.

[4] It is an offense under section 29b of the Bankruptcy Act (Comp. St. § 9613) for bankrupts to conceal their assets. It follows that it was a violation of section 37 of the Criminal Code for the bankrupts to conspire to commit that offense, and to do any overt act to effect the object thereof, and the objection that the indictment does not charge a conspiracy to commit an offense does not apply to these two defendants. It is sought to make that objection apply to the two other defendants, George and Saliba, upon the ground that it was not a crime for them to conceal assets of the bankrupt estate of Mitchell and Sam Jollit. If that objection be tenable, the result is that they are charged with entering into a conspiracy which did not have for its object any offense in so far as they are concerned. That the form of the indictment could be improved upon need not be denied.

All of the defendants were charged as conspirators. The two who afterwards became bankrupts were included, as well as the two who did not. Moreover, each defendant was charged with being a conspirator. Certainly, two of them were capable of committing the crime and offense which each and all of them are charged with having conspired to commit. That part of the conspiracy, therefore, which contemplated that two of the defendants should become bankrupts, was within section 37 of the Criminal Code, because it included parties who were capable of committing an offense against the Bankruptcy Act, and consequently against a law of the United States. The conclusion is that the action of the court in overruling the demurrer was proper.

[5] 2. Assuming, but not conceding, that knowledge by the grand jury of a more particular description of the goods recovered would constitute a variance, the court below correctly sustained the objections of the government to questions which sought to elicit testimony to that effect. Throughout the case counsel seem to overlook the fact that this is an indictment for conspiracy. The material inquiry is, not what goods the trustee found and dragged out of hiding places, but what goods the defendants conspired to conceal. The fact that they only partially succeeded is entirely consistent with the indictment, and with the idea that the defendants themselves, at the time they entered into the conspiracy, and while they were committing overt acts under it, had not determined upon the particular goods or the particular description of goods they would conceal. An indictment may be as general as the conspiracy it seeks to punish. Wing v. United States (C. C. A.) 280 Fed. 112.

[6] 3. It was not error to inquire of Saliba on cross-examination as to any effort by him to persuade the witness Sliman not to testify.

Evidence of that defendant's activity in meeting and entertaining a stranger, who apparently knew something about the case, was entirely proper, as tending to show a willingness to suppress testimony.

[7] 4. The refusal to grant the request, which had already in substance been given, to the effect that an innocent transportation or moving of the goods which belonged to Mitchell Jollit and Sam Jollit, was not erroneous, of course. The other request, to the effect that it would be necessary to prove an overt act after adjudication in bankruptcy, was properly refused for reasons already stated.

[8] It was not error to refuse the request of each defendant for a directed verdict of not guilty upon the whole evidence. Sam Jollit's connection with the whole matter was abundantly established by the testimony. He was in direct charge of the store at Birmingham, and, according to a number of witnesses whose testimony was undisputed, concealed in trunks and in boxes goods worth several thousand dollars, hid some of them in Birmingham, and shipped a large quantity to Fairfield and to Mobile. There was sufficient evidence against Mitchell Jollit, if believed by the jury, to warrant his conviction. While it is true that he was in charge of the store at Alexander City, yet it is evident from the testimony that he was frequently at the Birmingham store, and, with knowledge that goods had been shipped away, he acquiesced in his brother's request that Buckleh should claim them. In addition, according to the evidence of Buckleh, this defendant had himself shipped other goods to other cities. The defendant Moses George, according to the undisputed evidence, received and stored in his place of business goods which did not belong to him, and which he knew did belong to Jollit Bros. With this knowledge he paid draymen for hauling these goods, and sent some of them from his store to be shipped to Mobile. Saliba's knowledge that goods belonging to his employers were being packed up in trunks and stored away in another's place of business, his close association with the other defendants and intimate knowledge of what was being done, his statement that other goods had been shipped to a named person in another city, and finally his claim that he himself had received some of the goods, constitute evidence sufficient to sustain the verdict which was rendered against him.

We find no reversible error in the record, and the judgment is therefore affirmed.