KAPLAN et al. v. UNITED STATES.*

(Circuit Court of Appeals, Second Circuit. May 11, 1925.)

No. 248.

1. Conspiracy ☞47 — Evidence held sufficient to connect accused with conspiracy to violate Bankruptcy Act.

In prosecution for conspiracy to violate Bankruptcy Act (Comp. St. §§ 9585–9656), by concealing property of bankrupt corporation, evidence held sufficient to connect one of accused with conspiracy.

2. Conspiracy ☞27—Conspirator, taking part in one overt act, held subject to indictment.

In prosecution for conspiracy to violate Bankruptcy Act (Comp. St. §§ 9585–9656), by concealing property of bankrupt, where one overt act laid was interview between two conspirators, and two other acts were alleged, though these acts did not include one conspira-

*Certiorari denied 46 S. Ct. 107, 70 L. Ed. —.

tor, he might still be indicted and tried where interview took place.

3. Conspiracy ☞27—Interview laid as overt act before incorporation of company by conspirators held sufficient on which to base prosecution for conspiracy to conceal assets of company after it became bankrupt.

In prosecution of individuals and corporation for conspiracy to violate Bankruptcy Act (Comp. St. §§ 9585–9656), by concealment of property of bankrupt corporation, where conspirators planned to incorporate company, to obtain supplies, make quick sales, collect proceeds, and allow company to.fall into bankruptcy and escape with such loot as might have been gathered, interview before incorporation of company by conspirators was sufficient overt act on which to base prosecution of individuals.

4. Conspiracy ☞32 — Conspiracy to conceal property of bankrupt is separate crime from concealment.

Conspiracy to violate Bankruptcy Act (Comp. St. §§ 9585–9656), by concealing property of bankrupt from trustee, is separate crime from that of concealment.

5. Conspiracy ☞27—Whether conspiracy was laid in indictment as of date earlier than that at which all conspirators in fact joined. held immaterial.

In prosecution of three individuals and corporation for conspiracy to violate Bankruptcy Act (Comp. St. §§ 9585–9656), by concealing bankrupt's property from trustee, in which individuals were alleged to have conspired to organize corporation, obtain goods through it, sell them, and escape with as much of the proceeds as possible, and let company become bankrupt, fact that overt act, consisting of interview between two individuals, was alleged to have taken place before corporation was formed, was immaterial.

6. Criminal law ☞42—Directing acquittal of accused because he testified before grand jury held error.

In prosecution for conspiracy to violate Bankruptcy Act (Comp. St. §§ 9585–9656), by concealing property of bankrupt from trustee, directing acquittal of one conspirator on ground that he had testified before grand jury was error.

7. Conspiracy ☞40—Allowing jury to find accused guilty of conspiracy to conceal bankrupt's property, as to which two alleged. co-conspirators were not found guilty, held not error.

In prosecution of three individuals and corporation for conspiracy to violate Bankruptcy Act (Comp. St. §§ 9585–9656), by concealing property of bankrupt from trustee, allowing jury to find two individuals guilty of charge was not error, because of fact that verdict of not guilty was directed as to ·other individuals, and corporation was not found guilty.

8. Conspiracy ☞40—If conspiracy to conceal property of bankrupt from trustee comprehends participation of bankrupt, it is sufficient though he never joins.

In prosecution for conspiracy to violate Bankruptcy Act (Comp. St. §§ 9585–9656), by

concealing property of bankrupt from trustee, while conspiracy must comprehend participation of bankrupt, it is enough if it does, though he never joins.

**9. Criminal law ⬅406(4)—Testimony of witnesses in bankruptcy proceeding held competent against them, in prosecution for conspiracy to conceal bankrupt's property.**

Testimony by witnesses in bankruptcy proceedings, in which they were not bankrupts and not protected by Bankruptcy Act, § 7 (9), being Comp. St. § 9591, was competent against them in prosecution for conspiracy to violate Bankruptcy Act, by concealing bankrupt's property.

**10. Criminal law ⬅369(2)—Evidence of other offenses admissible, where facts are so interwoven with offense charged as to be material.**

Where prejudicial testimony as to other offenses is so interwoven with the offense charged as to be material, it is admissible, notwithstanding its collateral tendency to prejudice jury.

**11. Criminal law ⬅1036(1)—Permitting question as to whether one accused of conspiring to conceal property of bankrupt had been earlier connected with certain bankruptcy held not reversible error.**

In prosecution of three individuals and corporation for conspiracy to violate Bankruptcy Act (Comp. St. §§ 9585-9656), by concealing bankrupt corporation's property, admission of testimony that one of individuals had been earlier connected with bankruptcy of another corporation was not prejudicial, where question relating thereto was not objected to, and the only objection then made was request for withdrawal of jurors, which defendants were not entitled to have granted.

In Error to the District Court of the United States for the Southern District of New York.

Meyer Kaplan and Abe Kaplan were convicted of conspiracy to violate the Bankruptcy Act, and they bring error. Affirmed.

Hays, Podell & Shulman, of New York City (Julius M. Mayer, Herman Shulman, and A. Kane Kaufman, all of New York City, of counsel), for plaintiffs in error.

Emory R. Buckner, U. S. Atty., of New York City (Moses Polakoff, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HAND, Circuit Judge. The defendants were indicted with one Smythe and a corporation for a conspiracy to violate the Bankruptcy Act (Comp. St. §§ 9585-9656), by concealing property of the corporation from its trustee, when appointed. The outlines of the conspiracy as proved were as follows:

Abe Kaplan advertised in the newspapers to secure the assistance of a man familiar with the business of selling plumbers' supplies. Smythe answered, and after an interview Kaplan introduced him to his brother, Meyer, who talked with him, and agreed that he was a promising assistant. Thereafter Abe Kaplan and Smythe in Manhattan consulted a lawyer, one Muney, and directed him to incorporate a company, which he did. A shop was opened in Brooklyn under the direct management of Smythe, who ordered supplies from manufacturers. The general conduct of the business justified the jury in finding that from the start the whole venture had been a scheme devised by Abe Kaplan and Smythe, or one of them without the other's connivance, to obtain supplies, make quick sales, collect the proceeds, and then allow the company to fall into bankruptcy, making off with such loot as might meanwhile have been gathered.

The points presented on this writ are as follows: (1) That there was no evidence sufficient to connect Meyer Kaplan with the conspiracy; (2) that the overt acts were either not sufficiently proved or were committed before the conception of the conspiracy; (3) that the direction of a verdict in favor of Smythe should have made impossible the conviction of the Kaplans; (4) that testimony procured from the Kaplans severally under examination in the bankruptcy proceedings should not have been admitted. These we take up seriatim.

[1] As we have said, when Abe Kaplan first engaged Smythe, he consulted with his brother and procured his assent to the employment. Meyer at the time said that he had anticipated going into the business and had agreed to help Abe as much as possible. Again, when Abe Kaplan and Smythe went to open the company's account in a Brooklyn bank, it was Meyer Kaplan who deposited $10,000 in bills with the manager, Schwartz, introduced Smythe, and told Schwartz that checks were to be drawn in the names of Smythe and one L. Bloom, his brother-in-law, or of Bloom alone. In fact, L. Bloom was the name of Meyer Kaplan's wife, and it was she who later signed the signature card, which Schwartz gave to Meyer Kaplan on the day of the interview. It was she, also, who for a time signed all checks drawn by the company. Meyer Kaplan disclaimed any definite knowledge of his wife's connection with the business, and asserted that it was a private matter between her and his brother, amounting, as he vaguely understood it, to a loan. Inherently

this was extremely improbable; it was rendered more so by his false statement to Schwartz that the Bloom who was to sign checks was his brother-in-law.

We must suppose, if Meyer Kaplan was honest, that he then supposed that his wife's brother, who appears nowhere else, was to be in the business, and that later, unknown to him, this purpose was changed, and his wife substituted. In his examination in the bankruptcy proceedings, the brother-in-law did not figure. His initial interest and approval of Smythe's original employment, his daily visits to the shop, his payment of the money to open the account, his introduction of his brother and Smythe to the bank, and his taking possession of the books, as to all of which some evidence was given, preclude any reasonable conclusion, except that he was using his wife's name as a cover, either because he wanted to keep clear in general of any apparent connection with the business, or because, as was the fact, his connection with an earlier bankruptcy made it undesirable for his own name to appear. There seems to us ample evidence to hold him as one of the persons actively associated in the business.

[2] Three overt acts were laid, one the interview in Muney's office in Manhattan, at which Abe Kaplan and Smythe were present, another, which was not proved at all, and a third, which, though we think that it was prima facie proved, presents difficulties of jurisdiction which we do not find it necessary to consider. Though these acts did not include Meyer Kaplan, he might still be indicted and tried in Manhattan under the rule in Hyde v. United States, 225 U. S. 347, 32 S. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614, and Brown v. Elliott, 225 U. S. 393, 32 S. Ct. 812, 56 L. Ed. 1136. The point raised as respects the first act is that, since it occurred before the incorporation of the bankrupt company, it could not be an overt act in pursuance of a conspiracy to which that company was a party.

[3] We are to suppose that the three individuals, the Kaplans and Smythe, from the outset had in contemplation the incorporation of the company, its business, its subsequent bankruptcy, and its concealment of assets belonging to the trustee. The company, though of course a necessary contrivance in their plan, and formally the bankrupt, was merely a means by which they should execute their designs. We see no reason to doubt that the formation of a plan to create such a company and put it through

a dishonest bankruptcy would alone have been a crime punishable under the statute, though the plan had been nipped before it succeeded, or abandoned even before the company was incorporated. The plan presupposed the participation of the bankrupt; that was enough, if followed by an overt act.

[4] That the conspiracy is a totally separate crime from the crime of concealment under the Bankruptcy Act is shown by United States v. Rabinowich, 238 U. S. 78, 35 S. Ct. 682, 59 L. Ed. 1211. In Cohen v. United States, 157 F. 651, 85 C. C. A. 113, we held that the bankrupt corporation was not a necessary party to an indictment for conspiracy, and in Kaufman v. United States, 212 F. 613, 129 C. C. A. 149, Ann. Cas. 1916C, 466, that an individual might be separately indicted as an abettor, though he could not commit the crime itself. Thus, viewed substantially, the overt act was enough as against the defendants.

[5] The point becomes, therefore, merely one of pleading. The indictment lays a conspiracy between the four, and the proof shows that, while eventually there were four, the overt act took place before one joined, or was even in existence. Was this a fatal variance? More might be said for the point, if the law looked at a conspiracy as a contract stricti juris, so that, each time a new person joined, a new conspiracy was formed. We conceive that this is not so. Rather the conspiracy is determined by the design of the parties who originate it, and when a new person joins, if the purposes remain the same, it continues to be the single venture which it was before.

We fail to see how otherwise it is possible to allow the earlier declarations of the original conspirators to be used against a newcomer. The notion is expressed in those cases which say that, in joining, a new conspirator assumes whatever has been earlier done in pursuance of the plan. Samara v. United States, 263 F. 12, 15 (C. C. A. 2); Hedderly v. United States, 193 F. 561, 571, 114 C. C. A. 227 (C. C. A. 9). While the new adherent must, of course, be aware of the plan as a whole to become a party to the enterprise, by his conscious adhesion he adopts what has been done before. Hence it seems to us immaterial that the conspiracy be laid as of a date earlier than that at which all in fact joined, or that the original parties are convicted upon an overt act which takes place before the new party came in. We reserve the question whether the company might have been convicted by the proof of such an overt act. Therefore,

whether viewed as substance or as form, we think the point not good.

[6] The next question is the directed verdict in favor of Smythe. This was the act of the judge at trial sua sponte, on the ground that Smythe had testified before the grand jury. This was clear error, not, as the defendants seem to suppose, because Smythe had in fact "waived immunity," but because there is not the slightest warrant of law for saying that in the absence of statute any one may be quit of his crimes by testifying either before a grand jury or anywhere else. How such a notion should have got its apparent currency it is impossible to see. A man has, of course, the right to stand mute, if he will; but, if he speaks, he does not by that purge himself of his crime. He may be indicted, tried, and convicted, quite as though he had stood on his privilege. The contrary notion is a thorough perversion of the whole principle of self-incrimination, perhaps arising from a misunderstanding of those statutes which, in order to compel persons to testify at all, give them plenary absolution.

As to the results of this error we are not in agreement. Judge HOUGH thinks that from the directed acquittal of Smythe the jury must have concluded that his version of the case was true, and that of Abe Kaplan false, from which it followed that the Kaplans were guilty. Thus he believes the acquittal was in substance a directed verdict against the Kaplans. We will not say that this would not be a formidable objection, if the trial judge had directed the acquittal without any reserve. It seems to us, however, that there was no reasonable danger of the jury's so understanding the ruling, because the trial judge in his charge put the acquittal upon the mistaken ground we have noticed above. It does not seem to us possible that the jury could have understood this as an assertion, conclusive or even admonitory, that they were to accept Smythe's testimony as true, with the necessary result of discrediting the Kaplans' defense.

[7, 8] The point is, indeed, not one of which the defendants themselves complain. They say that it was error to allow the jury to find the Kaplans guilty of a conspiracy to which neither Smythe nor the company was a party. This is the argument with which we have already dealt; it ignores the distinction between the parties to a conspiracy and its scope. While the conspiracy must undoubtedly comprehend the participation of the bankrupt, it is enough

if it does, though he never joins. In the case at bar the actual privity of the bankrupt was the merest formality, because the company was only a creature of whoever was the active contriver of the fraud, Smythe, or the Kaplans, or both. So much was this the fact that as to it the jury did not even find a verdict. Since the trial judge properly explained to the jury that the conspiracy must include the bankruptcy of the company and its concealment of its own assets, he said all that was necessary. It was enough if any two of the three individuals concerted such a scheme. As matter of variance the defendants themselves concede that it is not essential to convict all of the defendants named in the indictment.

[9] The last question is the admission of the testimony given by the Kaplans in the bankruptcy proceedings. Not being themselves bankrupts, they were not protected by section 7 (9) of the act (Comp. St. § 9591), and their admissions were competent against them upon the trial of an indictment, as in a civil cause. Had they wished to remain mute, no doubt they might have done so; but, having once consented to speak, any privilege was at an end. We think it unnecessary to elaborate so plain a point. There were indeed certain phases of their testimony admitted which implicated them in earlier bankruptcies. In no case did they involve the commission of other crimes, so far as appeared, and with the possible exception of the testimony of Abe Kaplan, regarding the Bronx Hardware Company, the prejudicial matter was so interwoven with the substance of the crime as laid, as to be entirely material. That being the case it made no difference how much it hurt their case before the jury.

[10, 11] A man may not circumscribe the inquiry into his crimes because the evidence may be collaterally prejudicial to him. However, we agree that it was not material to the case at bar that Abe Kaplan had been earlier connected with the bankruptcy of the Bronx Hardware Company. The question when put was not objected to, and when answered the counsel only asked for the withdrawal of jurors. That was clearly an inordinate request, and the learned judge at most need have done no more than direct the jury to disregard the answer, which he was not asked to do. In any event the difference in result would not have been so substantial, once the evidence got in, as to justify a reversal of the conviction. The mere fact that an earlier company with

which Abe Kaplan had been connected had gone into bankruptcy, apparently after he had severed his connection with it, is not so serious a matter as to call for such drastic correction.

We can find nothing in the record justifying reversal; the guilt of the defendants has been found upon adequate evidence and after a fair trial.

Judgment affirmed.