## CARTER v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
May 7, 1927.

No. 7618.

1. **Conspiracy 43(6)—Indictment for conspiracy to conceal property of bankrupt's estate from trustee held to sufficiently describe conspiracy (Penal Code, § 37 [Comp. St. § 10201]; Bankruptcy Act, § 29b [Comp. St. § 9613]).**

Indictment under Penal Code, § 37 (Comp. St. § 10201), for conspiracy to conceal property of bankrupt's estate from the trustee, in violation of Bankruptcy Act, '§ 29b (Comp. St. § 9613), charging that defendants, anticipating the bankruptcy of the defendant corporation and a selection of a trustee of the bankrupt estate, on a certain date and continuing till after bankruptcy at a certain place unlawfully conspired to conceal from the trustee three described certificates of deposit purchased with the funds, and therefore the property of said corporation, and that certain acts were done in execution of the plan, *held* sufficient; the gist of the offense· being the conspiracy, and not the concealment of property.

2. **Conspiracy 28—Persons · not bankrupts may conspire to conceal property from trustee.**

Persons who are not bankrupts may be guilty of conspiracy to conceal property from trustee in bankruptcy.

3. **Criminal law 147—Three-year statute of limitations governs prosecution for ·conspiracy to conceal assets from trustee in bankruptcy (Comp. St. § 1708; Bankruptcy Act, § 29d [Comp. St. § 9613]).**

The three-year statute of limitations (Comp. St. § 1708), and not the limitation provided in Bankruptcy Act, § 29d (Comp. St. § 9613), governs prosecution for conspiracy to conceal property of bankrupt's estate from the trustee.

4. **Conspiracy 28—Offense of conspiracy to conceal assets from trustee in bankruptcy may be committed before bankruptcy.**

The offense of conspiracy to conceal property of bankrupt's estate from his trustee may be committed prior to bankruptcy.

5. **Conspiracy 47—Conspiracy to conceal assets from trustee in bankruptcy may be shown by inference.**

The existence of conspiracy to conceal assets from trustee in bankruptcy may be shown by inference.

6. **Conspiracy 43(12)—Evidence held not to raise variance ·as to form of property which defendants conspired to conceal from trustee in bankruptcy.**

Evidence on prosecution for conspiracy to conceal property of bankrupt's estate from his trustee *held* to support allegation of indictment that object of conspiracy was to conceal certificates of deposit, and not to raise variance by showing object was to conceal money, the certificates ·becoming bankrupt's property on their issuance to one of its officers, because

in their purchase its funds were wrongfully used.

7. **Conspiracy 47—Evidence of conspiracy to conceal assets from trustee in bankruptcy and of commission of overt acts held sufficient.**

Evidence on prosecution for conspiracy to conceal property of bankrupt's estate from the trustee *held* sufficient to warrant finding that defendant, with another, had entered into a conspiracy and had committed one or more of the overts.

8. **Criminal law 721(2)—Cross-examination on incriminating matters to which defendant did not testify held not necessary condition precedent to comment in argument on failure to testify.**

Where defendant testified in relation to facts which tended to indicate her innocence, but failed to testify relative to other facts in the case which pointed to her guilt, it was not necessary, for comment in argument on such failure, that there should have been an attempt to enter on improper cross-examination of defendant in respect to such facts.

9. **Criminal law 721(2)—Defendant having testified to merits, prosecution could comment on her failure to testify concerning incriminating matters.**

Defendant having testified concerning certificates of deposit mentioned in the indictment, and so testified to the merits of the case, her failure to testify concerning other incriminating facts in the case could be commented on ·by prosecuting counsel as furnishing unfavorable inference.

In Error to the District Court of the United States for the Western District of Missouri; Merrill E. Otis, Judge.

George W. Carter was convicted of conspiracy to conceal property from trustee in bankruptcy, and he brings error. Affirmed.

Bart M. Lockwood, of St. Joseph, Mo. (Eastin & McNeely, of St. Joseph, Mo., on the brief), for plaintiff in error.

William L. Vandeventer, Asst. U. S. Atty., of Kansas City, Mo. (Roscoe C. Patterson, U. S. Atty., of Kansas City, Mo., on the brief), for the United States.

Before BOOTH, Circuit Judge, and FARIS and DAVIS, District Judges.

DAVIS, District Judge. The grand jury of the Western division of the Western district of Missouri returned an indictment on May 1, 1925, which was transferred and filed in the St. Joseph division of the said district on June 8, 1925. This indictment charged the Carter-Williams Grain & Coal Company, a corporation, George· W. Carter, F. R. Mann, and Hester Murray with conspiracy to violate section 29b of the Bankruptcy Act (Comp. St. § 9613). The indictment was in

three counts, and at the opening of the trial the government elected to proceed upon the first count.

The jury returned a verdict of not guilty as to defendant Mann, and a verdict of guilty as to defendants Carter and Murray. There was no verdict as to the corporate defendant. Defendant Carter was sentenced to a year and a day imprisonment and to pay a fine of $2,000. Defendant Murray was sentenced to pay a fine of $25. The defendant George W. Carter brings the case here on writ of error. (The parties are herein designated as in the court below.)

The Carter-Williams Grain & Coal Company was incorporated June 10, 1921. Defendants Hester M. Murray, George W. Carter, and one Louis J. Komer were the original stockholders. An involuntary petition in bankruptcy was filed on April 13, 1922, and on September 22, 1922, the company filed an answer, confessing bankruptcy, whereupon the adjudication followed on the same day. The trustee was selected and qualified on September 2, 1922. The trustee received no property from any of the defendants.

The defendant Carter was president, treasurer, and the active manager of the company. L. J. Komer was vice president, and defendant Hester M. Murray was secretary. Mildred De Buff, a stenographer in the office of the company, testified that on Saturday, March 18, 1922, she was excused for the afternoon, upon being informed by Carter that a directors' meeting was to be held for the purpose of transferring an Iowa farm belonging to Carter to the Carter-Williams Grain & Coal Company. The farm in Iowa contained 73 acres and was reasonably worth $9,490. It was incumbered by two mortgages, aggregating $8,500, so the equity was worth about $990. Creditors at that time were pressing the company. There was evidence that the directors' meeting was attended by Komer and defendants Carter and Murray. Mr. Komer testified, however, that he was not present at the meeting. The company executed a check to defendant Murray on the same day. On Monday following the meeting the stenographer, at the direction of Carter, drew a check of the company for $4,000, payable to cash. A similar check was drawn for $550 on April 5th, and another for $1,500 on April 11th. The stub book carried the notation in connection with each of the checks, "On the farm." The first two checks were indorsed "G. W. Carter." The third check seems to have been cashed without indorsement.

On the same day the above check for $4,-000 was issued it was presented by defendant Carter to the Empire Trust Company, and was exchanged for four certificates of deposit, for $1,000 each, payable to M. L. Wince. Defendant Mann testified that Carter told him that M. L. Wince was his (Carter's) sister. Three of these certificates were paid July 8, 1922, having been deposited in the Tootle-Lacy National Bank by F. R. Mann at the request of defendant Carter. Before depositing these certificates, Mann gave Carter a check for $3,020, being approximately the amount of the three certificates, with interest. This check was exchanged by Carter at the Tootle-Lacy National Bank for four cashier's checks, for $500 each, payable to F. R. Mann, and $1,020 in cash. On August 28, 1922, two of these cashier's checks were cashed by F. R. Mann, and on July 10, 1922, one by defendant Murray, and one by defendant Carter. Defendants Mann and Murray testified in the case, but the defendant Carter was not called as a witness.

[1] I. It is asserted that the indictment is insufficient, and that the demurrer thereto should have been sustained. When the demurrer was filed, there were three counts in the indictment. Some of the grounds of the demurrer were then probably well taken, but cannot now be important, because the prosecution was required to elect, and the trial proceeded upon only one count of the indictment. So we pass over those objections to that portion of the indictment which was eliminated from the case. There remains the complaint that the alleged conspiracy was not sufficiently described.

The indictment charged the defendants under section 37 of the Penal Code (section 10201, Comp. Stat.) with conspiracy to conceal certain property of a prospective bankrupt. Section 29b of the Bankruptcy Act, as it then read, in part provided that "a person shall be punished, by imprisonment for a period not to exceed two years, upon conviction of the offense of having knowingly and fraudulently concealed, while a bankrupt, ar after his discharge, from his trustee any of the property belonging to his estate in bankruptcy."

The substance of the indictment was that the defendants, anticipating the bankruptcy of the Carter-Williams Grain & Coal Company and the selection of a trustee of the bankrupt estate, on March 20, 1922, and continuing until after bankruptcy, at St. Joseph, Mo., unlawfully conspired to conceal from the trustee three described certificates of deposit, purchased with the funds, and there-

fore the property, of the said company, and that certain acts were done by the defendants in the execution of the plan. The gist of the offense is the conspiracy, not the concealment of property. An indictment which describes the offense with sufficient certainty to identify it meets the requirements of the law. Here the defendants are informed of the time, place, and the parties to the unlawful agreement. The purpose of the undertaking is made clear. The indictment identifies the offense, so that it could be pleaded in bar of another prosecution, and plainly informed the defendants the nature of the charge that they were called upon to meet. It is not necessary that the indictment set out with particularity the elements of the offense of concealing property from a trustee in bankruptcy as though the prosecution were for that crime. Williamson v. U. S., 207 U. S. 425, 28 S. Ct. 163, 52 L. Ed. 278; Rulovitch v. U. S. (C. C. A.) 286 F. 315; Anderson v. U. S. (8th Cir.) 260 F. 557; Kolbrenner et al. v. U. S. (C. C. A.) 11 F.(2d) 754; Jollit v. U. S. (C. C. A.) 285 F. 209; Baker v. U. S. (C. C. A.) 285 F. 15; Israel v. U. S. (C. C. A.) 3 F.(2d) 743. It seems that, without resorting to the allegation of the overt acts, which as we understand the law are not to be considered in this connection, the indictment in this case was sufficient. Paszkiewicz et al. v. U. S. (C. C. A.) 3 F.(2d) 272.

[2-5] II. Another assignment of error is the refusal of the court to sustain defendants' demurrer to the evidence. In considering this complaint there are a few propositions that can be laid aside with a mere statement. Persons who are not bankrupts may be guilty of conspiracy to conceal property from the trustee. Israel v. U. S. (C. C. A.) 3 F.(2d) 743; Jollit v. U. S. (C. C. A.) 285 F. 209. The three-year statute of limitations (section 1708, Comp. Stat.), and not the limitation provided in section 29d of the Bankruptcy Act, governs this case. U. S. v. Rabinowich, 238 U. S. 78, 35 S. Ct. 682, 59 L. Ed. 1211. The offense may be committed prior to bankruptcy, and the existence of the conspiracy may be shown by inference. Greenspahn v. U. S. (C. C. A.) 298 F. 736.

[6] It is claimed that there was a variance, in that it was charged that the purpose of the conspiracy was to conceal certificates of deposit, and the evidence indicated, if anything, an effort to conceal money. If the company's funds were wrongfully used in the purchase of certificates of deposit, and the evidence so indicated, they became upon issuance the property of the bankrupt. Silsbury v. McCoon, 3 N. Y. 379, 53 Am. Dec. 307. The

property was in the form of certificates of deposit on the day it is charged that the conspiracy was entered into, March 20, 1922. It was in this form when the petition in bankruptcy was filed, April 13, 1922, as well as when some of the overt acts were committed in July, 1922. The status of a bankrupt's property is to be determined as of the date of the filing of the petition in bankruptcy. The property which passes to the trustee at the time of the adjudication is that which the bankrupt company owned when the petition was filed, and the title of the trustee vests by relation as of that time. Acme Harvester Co. v. Beekman Lbr. Co., 222 U. S. 300, 32 S. Ct. 96, 56 L. Ed. 208; Everett v. Judson, 228 U. S. 474, 33 S. Ct. 568, 57 L. Ed. 927, 46 L. R. A. (N. S.) 154; In re Federal Contracting Co. (C. C. A.) 212 F. 688; Toof v. City Natl. Bank (C. C. A.) 206 F. 250; Fairbanks Steam Shovel Co. v. Wills, 240 U. S. 642, 36 S. Ct. 466, 60 L. Ed. 841.

The filing of the petition impressed all property of the corporation, including the certificates of deposit, with the character and status of assets of an estate in bankruptcy. This was peculiarly true of property, such as that here involved, which was then in the control of an officer of the company, because there can be no question of his knowledge of the situation. The trustee was therefore entitled to have the property in the form that existed at the institution of the proceeding, and was at liberty to disregard subsequent changes in the form, or disposition made of the same. The evidence supported the allegation of the indictment that the object of the conspiracy was to conceal the certificates of deposit, and there was no variance in the case.

[7] The defendant Carter was president and in active charge of the Carter-Williams Grain & Coal Company. The defendant Murray was a director of the company. There was evidence that a directors' meeting, attended by both of these parties, was held for the purpose of transferring Carter's equity in a farm to the company. The corporation on the same day issued a check to defendant Murray. Immediately following the meeting the company's checks were issued for over $4,000, in payment of the farm, but were not actually so used. They were used to purchase certificates of deposit, three of which it is charged the defendants planned to conceal. In addition to the testimony of an actual meeting of the parties, there is revealed by the evidence a chain of events, participated in by all the defendants, and resulting in the cashing of the certificates of deposit and

the distribution of the proceeds among the defendants. The evidence was clearly sufficient to warrant the jury in finding that the defendant, with another, had actually entered into a conspiracy and had committed one or more of the overt acts. Keith v. U. S. (C. C. A.) 11 F.(2d) 933; Kaplan v. U. S. (C. C. A.) 7 F.(2d) 594. The court did not err in overruling the demurrer to the evidence.

[8, 9] III. The defendant also contends that counsel for the government was permitted to make an improper argument to the jury. Hester Murray, one of the defendants, was called as a witness, and she was shown the three certificates of deposit issued by the Empire Trust Company, on March 20, 1922, payable to M. L. Wince, each for the sum of $1,000, and one other exhibit. She stated that she did not see the certificates of deposit during the months of March, April, May, June, or July of 1922, and that she did not know they were in existence. This was the substance and extent of her testimony.

During the course of his argument to the jury, the assistant district attorney said:

"Was he (defendant Mann) an innocent agent when he took $500 that came from this bankrupt corporation and indorsed it to Hester Murray? Why did Hester Murray get it? What did she say about it? She took the stand, but on that point her voice is silent."

"For instance, Hester Murray could have told you about the account. She could have explained when she was on the stand."

"She could have explained. She was not an employee of this corporation. She could have explained why she got the $500 of this money."

"The only evidence we could give you was her deposit slip, because you know the checks go back to her. She never produced it. She never told you what she got that $500 for. Did she tell you what she got the $500 for?

"I don't know whether she ever saw those certificates of deposit. I don't care. But I know she got $500 of the money that the certificate represented after it was split up into cashier's checks. Why she got it, you do not

know, and you cannot know, unless she tells you, and she won't."

To this argument counsel for the defense unavailingly objected. It is not asserted that the statement made to the jury by the attorney for the prosecution was a comment upon the failure of defendant Carter to testify, but that it was improper to refer to matters concerning which the witness might have testified, but did not. It is contended that, before making such an argument, counsel should have interrogated the witness concerning the disposition of the proceeds of the $500 cashier's check, and then, in the event of his failure to get a response, he might have commented upon the matter before the jury. This does not seem to be the rule. Such cross-examination would not have been proper or availing, because not warranted by the direct testimony of the witness. It cannot be that, by attempting to enter upon an improper cross-examination, the prosecution lays the foundation for, and will be permitted to make, comment that otherwise would not be warranted. When the defendant Murray elected to waive her privilege by taking the witness stand and giving testimony, she was then to be regarded as an ordinary witness. This defendant testified in relation to facts that tended to indicate her innocence, and gave no evidence in connection with other facts in the case that pointed to her guilt. But by adopting this course the witness did not preclude the prosecution from calling the attention of the jury to the fact that some features of the case were unexplained. The certificates of deposit concerning which the witness testified were those mentioned in the indictment. So, in giving evidence concerning them, the defendant Murray was testifying to the merits of the case, and the comment made, and the inference drawn from the failure of the witness to make a complete disclosure, was not improper. Caminetti v. U. S., 242 U. S. 470, 37 S. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168; Grantello v. U. S., 3 F.(2d) 117 (8th Cir.).

There appears to be no substantial error in the case, and the judgment is affirmed.