PEOPLE *v.* LAY.

1. CRIMINAL LAW — GRAND JUROR — PROSECUTOR — OBJECTIONS — STATUTE.

No objection can be made to a grand jury, or to any member thereof, except for reasons specified in the statute. 3 Comp. Laws, § 11881, 3 Comp. Laws 1915, § 15708.

2. SAME—ACCUSATION.

A prosecutor is one who prefers an accusation against a party whom he suspects to be guilty.

193 Mich.—2.

3. SAME.

Where a plea to an indictment in a criminal case charged that one of the grand jurors was disqualified from sitting on the jury because he had been a Federal official in a prosecution in which respondent was indicted, and which involved the same state of facts, and that he acted as a stenographer in taking testimony before the referee in bankruptcy in a related cause, and that the testimony so taken was read from the juror's minutes before the grand jury which returned the indictment, the averment was duplicitous in so far as the pleader may have intended to charge that the indictment was founded upon incompetent testimony, and the mere fact that incompetent testimony was received and considered was not fatal, unless it was the only testimony considered: the juror was not a prosecutor in the sense which would disqualify him to sit.

4. SAME—INDICTMENT—QUASHING INDICTMENT.

A matter urged as an objection to the validity of the action of such grand jury in returning an indictment, aside from the provisions relating to the competency of grand jurors, cannot be considered on a motion to quash.

5. SAME—EVIDENCE—EMBEZZLEMENT.

Upon reviewing the testimony claimed by respondent to have been insufficient, the verdict of the jury, in a prosecution for embezzlement from a private corporation of which respondent was vice president and a director, is *held* to have been justified by evidence tending to show an offense, though denied by the accused.

6. SAME — EVIDENCE — CONSTITUTIONAL PRIVILEGE — GRAND JURY —WITNESSES.

That the respondent was summoned by the grand jury to give testimony before it, appeared and testified, and, lacking advice of counsel, did not know what questions he was privileged to refuse to answer, was not a ground to quash the indictment; the evidence was given by him without objection, and hence might properly be considered by the jury.

7. SAME—BANKRUPTCY ACT—PRIVILEGE.

But no testimony given in bankruptcy proceedings by the respondent should have been received in the trial of the prosecution against him, officers of a bankrupt corporation

being within the privilege of 30 U. S. Stat. 548, U. S. Comp. Stat. 1913, § 9591.

8. SAME—ARGUMENT—CONDUCT OF TRIAL.

Improper argument of counsel for the prosecution that the respondent and other witnesses had failed to testify, was a proper subject of criticism, and constituted reversible error. See 3 Comp. Laws, § 10211, 3 Comp. Laws 1915, § 12552.

Exceptions before sentence from Kalamazoo; Weimer, J.   Submitted April 14, 1916.   (Docket No. 129.) Decided September 26, 1916.

Frank B. Lay, Jr., was convicted of embezzlement. Reversed.

*Grant Fellows,* Attorney General, and *Frank F. Ford,* Prosecuting Attorney (*Charles W. Nichols,* of counsel), for the people.

*E. M. Irish* and *Charles H. Farrell* (*Allan H. Frazer,* of counsel), for respondent.

Respondent in this case was indicted by a grand jury, and in said indictment was charged, together with one Victor L. Palmer and George T. Lay, with having embezzled from the Michigan Buggy Company, a corporation of which respondent was vice president and a director, the sum of $42,446.52.   To the information respondent interposed several pleas in abatement, the substance of which was as follows:

(1) That Joseph W. Stockwell, one of the grand jurors of the jury which found the indictment, was disqualified from acting for the reason that said Stockwell was the United States commissioner for the western district of Michigan before and at the time he was drawn on said grand jury, acting as such in the western district of Michigan during all of the time he sat on said grand jury, and that before said grand jury

was impaneled, said Stockwell had before him as such commissioner the minutes of the testimony upon which respondent was indicted, given by respondent in the bankruptcy proceeding, with a view of issuing a warrant against this respondent under the statutes of the United States of America, and from his investigations, which included a consultation with the United States district attorney, said Stockwell became a part of the prosecuting force of the government of the United States of America, to prosecute this respondent upon the same state of facts upon which he was afterwards indicted by said grand jury, and that said Stockwell had power in his discretion to have started a criminal proceeding upon said state of facts against respondent, and that said Stockwell was one of the prosecutors against him on said state of facts before he was drawn on said grand jury, and was disqualified from acting as a grand juror for that reason.

It is further alleged that said Stockwell acted as a stenographer in the taking of testimony before the referee in bankruptcy in the matter of the Michigan Buggy Company, a bankrupt; that in said proceeding said Stockwell took the testimony of the respondent, and that the minutes of said testimony were used in said contemplated proceeding before said United States commissioner.

It is further alleged that the testimony so taken by Stockwell in the bankruptcy proceeding was by him read before the grand jury as evidence against respondent.

(2) That the books and writings of the Michigan Buggy Company and the testimony of the bookkeepers and clerks having the same in charge were used to secure the indictment of the respondent, and that such use was illegal under the Federal Bankruptcy Act (Act July 1, 1898, chap. 541, 30 U. S. Stat. 544).

(3, 4, 5) These pleas set up that various members

of the grand jury were disqualified to act as said jurors, for the reason that they were stockholders in various banks, which banks were creditors of the bankrupt Michigan Buggy Company.

(6) It is charged that the respondent was summoned by the grand jury to give testimony before it, and that he appeared in obedience to said summons and gave such testimony; that, being without the advice of counsel, he did not know what questions he was privileged to refuse to answer, and he avers that, without his testimony so obtained, no indictment would have been found against him.

(7) It is charged that the name of Stockwell was not among those in the grand jury box, although an attempt had been made by those in charge of the grand jury to have his name placed upon the list by the supervisors. It is further charged that one Pomeroy, a juror, having been excused, Stockwell, who at the time was seated at his desk in the courtroom, acting as official stenographer of the ninth judicial circuit, was called as a talesman, and immediately ceased to perform his duties as such stenographer, and proceeded to act as a member of the said grand jury, participating in all of its deliberations and voting for the indictment of the respondent.

The people filed a demurrer to said several pleas of abatement, contending that the same were insufficient in law to bar the people from prosecuting the said indictment. Respondent thereupon demanded a bill of particulars of the charges upon which the indictment in the cause was based. Such bill was presented by the people, and in it, it was charged that upon 15 separate dates between January 2, 1913, and July 1, 1913, the defendant had embezzled certain sums of money, ranging from $100 to $3,900, and amounting in the aggregate to upwards of $40,000.

A brief history of the facts leading up to the indict-

ment of the respondent, together with his brother George T. Lav and Victor L. Palmer, is as follows: The Michigan Buggy Company was incorporated in 1883, and reincorporated in 1893. In 1909 it had a capital stock of $300,000, all common stock, and that year $200,000 of preferred stock was issued, and the company, which theretofore seems to have attained a fair degree of prosperity as a manufacturer of buggies, embarked upon the manufacture of automobiles. This business was continued by the company until its bankruptcy in the summer of 1913. Up to 1912 M. H. Lane, F. B. Lay, Sr., and Victor L. Palmer were the owners of all the common stock of the concern. They constituted the board of directors, and were for many years the officers of the corporation; M. H. Lane being president, Frank B. Lay, Sr., treasurer, and Victor L. Palmer, secretary. Some time in the year 1912 (probably April 20th) 100 shares of the common stock of the company were given to each of the sons of F. B. Lay, Sr., viz., George T. Lay and respondent, Frank B. Lay, Jr. The board of directors was increased from three to five, and George T. and Frank B. Lay, Jr., were made vice presidents. The respondent commenced to work for the company when he was 18 years of age, in 1905, at a salary of $25 per month. This salary was increased from time to time until during the last year of the existence of the corporation, he drew, according to the books of the company, as assistant sales manager, the sum of $300 per month. This salary was paid by two separate checks of the company each month of $150 each. For some reason they were charged to two separate accounts upon the books. Prior to the year 1912 respondent's salary had never exceeded $1,800 a year. On April 20, 1912, a meeting of the board of directors was held at which all of the directors were present. At this meeting Mr. Lane was deposed as president, and

Frank B. Lay, Sr., was elected in his place. Mr. Lane was made chairman of the board, and Mr. Palmer was elected secretary and treasurer. On February 8, 1912, at a meeting of the board of directors, the salaries of the officers of the company for the year 1912 were fixed as follows:

"Mr. Lane ................................... $6,000 00
Mr. Lay ................................... 6,000 00
Mr. Palmer ................................ 6,000 00"

—with further compensation of $6,000 to Mr. Palmer, to be continued at the discretion of the board. In June, 1912, respondent and his brother having in the meantime been elected directors of the company, a meeting of four of the directors of the board, Mr. Lay, Sr., Mr. Palmer, George T. Lay, and the respondent, was held at the Burdick House in Kalamazoo. The fifth director, Mr. Lane, had no notice of this meeting. It was there talked over and agreed between the four directors attending that Mr. Lay, Sr., should draw a larger amount out of the business than he was then drawing according to the resolution of February 8, 1912, that Mr. Palmer's salary should be $25,000 per year, and that the salary of George T. Lay and respondent should be $12,000 per year each. The record does not disclose that any formal action was taken by the four members of the board at this meeting, or that any record thereof was made in the corporate books. Following this meeting, and commencing on July 1, 1912, respondent continued to receive, as before, his salary of $300 per month in two checks ($150 each) which were usually drawn and signed by himself, one of which was charged to "office and selling expense," the other to "personal account." In addition to this sum of $300 respondent received in cash from Palmer each month the sum of $700, which brought his salary up to $12,000 per annum, the amount agreed upon at the Burdick House meeting. Commencing January 1,

1913, respondent received cash payments from Mr. Palmer each month in an amount sufficient to make his salary from January 1, to July 1, 1913, $25,000 per annum. No warrant for the payment of these sums by Palmer to respondent seems to have existed prior to March 29, 1913, upon which date the respondent, his brother, George T. Lay, and Palmer held a so-called meeting of the board of directors. Neither Mr. Lay, Sr., nor Mr. Lane were present. At this meeting the following business was transacted:

"Mr. George T. Lay moved that the following salaries paid to the officials of the company for the year ending January 31st, 1913, be hereby ratified and approved as follows:

| | |
|---|---|
| M. H. Lane ............................... | $6,000 00 |
| F. B. Lay, Sr., for salary paid and dividends paid upon both common and preferred stock, an amount less than ..................... | 35,000 00 |
| George T. Lay an amount not exceeding...... | 25,000 00 |
| F. B. Lay, Jr., an amount not exceeding...... | 25,000 00 |
| V. L. Palmer, an amount not exceeding...... | 25,000 00 |

"Mr. Palmer supported the motion, and it was put to vote and carried.

"Geo. T. Lay moved that the following officials salary list be approved for the year ending January 31; 1914, unless otherwise ordered by this board:

| | |
|---|---|
| M. H. Lane ............................... | $6,000 00 |
| F. B. Lay, Jr. ............................. | 25,000 00 |
| V. L. Palmer ............................. | 25,000 00 |
| George T. Lay ............................. | 25,000 00 |

"Mr. Palmer supported the motion, which, being put to vote, was carried.

"Mr. George T. Lay moved that the salary of President Mr. F. B. Lay, Sr., for the year ending January 31, 1914, be fixed at an amount of $35,000.00, provided, however, that the dividends paid Mr. Lay, Sr., upon both his common and preferred stock be construed as to apply against this authorization of salary so that the combination of salary and common and preferred

dividends do not exceed the amount stated, $35,000.00. Mr. Palmer supported the motion, and it, being put to vote, was carried.

"Mr. Geo. T. Lay moved that: Whereas, the salary paid the chief engineer, Mr. W. H. Cameron, for the past year was $10,000.00, and that while this salary was originally agreed upon to continue for a three-year period, for business reasons and commercial circumstances, he moved that for the second year the salary be fixed at $16,000.00. Mr. Palmer supported the motion, which was put to vote and carried.

"There being no further business, the meeting closed in due form."

In order to possess himself of the necessary cash with which to satisfy the "salaries" thus provided for, Mr. Palmer caused checks to be drawn, payable to cash. These checks were, by Mr. Palmer, cashed and the money distributed to the various officers, including respondent. For each payment of cash received by respondent from Mr. Palmer, respondent gave a receipt, a sample of which is as follows:

"$1,783.33.                    February 1, 1913.
"Received of the Michigan Buggy Company $1,-783.33, balance January salary.
                                "F. B. LAY, JR."

Most, if not all, of the checks drawn payable to cash and cashed by Palmer were charged upon the books of the company to "J. Roach & Co.," and appeared on said books as an asset of the corporation. It is fairly inferable from the record that the "J. Roach & Co." account was a fictitious account, invented for the purpose of concealing the withdrawal of the funds represented by it.

The jury returned a general verdict of "guilty," and the case is now before us upon exceptions before sentence.

BROOKE, J. (*after stating the facts*). The first mat-

ter requiring consideration is the assignment of error based upon the action of the court in sustaining the demurrer to the several pleas in abatement. The statute involved (section 11881, 3 Comp. Laws [3 Comp. Laws 1915, § 15708]) provides:

"A person held to answer to any criminal charge, may object to the competency of any one summoned to serve as a grand juror, on the ground that he is the prosecutor or complainant upon any charge against such person; and if such objection be established, the person so summoned shall be set aside."

Section 11882 (15709) provides:

"No challenge to the array of grand jurors, or to any person summoned as a grand juror, shall be allowed in any other case than that specified in the preceding section."

This court has frequently held that no objection can be made to a grand jury or to any member thereof except for reasons specified in the statute. *People* v. *Reigel*, 120 Mich. 79 (78 N. W. 1017); *People* v. *Salsbury*, 134 Mich. 537 (96 N. W. 936). The question, therefore, under the first part of the first plea in abatement, is whether Mr. Stockwell, at the time he was placed upon the grand jury, was a "prosecutor or complainant upon any charge against such person" within the meaning of the statute. It is strenuously urged on behalf of respondent that because Stockwell, before he was called to the grand jury, had the minutes of the testimony taken by him in the bankruptcy proceeding and as a United States commissioner had made an investigation which included a consultation with the United States district attorney with a view to issuing a Federal warrant against the respondent upon the same state of facts relied upon in the case at bar, he should therefore be held to be a "prosecutor" within the meaning of the excluding statute. It should be observed that the plea does not allege that any warrant

against respondent was issued by Stockwell, but only alleges that Stockwell considered the testimony taken in the bankruptcy proceeding "with a view of issuing a warrant." A "prosecutor" is said to be "one who instigates the prosecution upon which the accused is arrested." *State* v. *Cohn,* 9 Nev. 179, 191; *Phillips* v. *Bevans,* 23 N. J. Law, 373; *United States* v. *Sandford,* 27 Fed. Cas. p. 952. As defined by Bouvier, a "prosecutor" is "one who prefers an accusation against a party whom he suspects to be guilty." A prosecutor cannot exist unless there is a prosecution, and a prosecution involves the idea of a formal complaint, information, or indictment filed against the criminal. *People* v. *Garnett,* 129 Cal. 364 (61 Pac. 1114); *Day* v. *Inhabitants of Otis,* 8 Allen (90 Mass.), 477. We think it clear that Stockwell was neither "prosecutor or complainant" within the meaning of the statute.

The second part of the first plea avers, upon information and belief, that the minutes of the testimony taken before Stockwell in the bankruptcy proceeding were used and read before the grand jury as evidence against respondent by Stockwell. Assuming that this averment is intended by the pleader to strengthen the claim that Stockwell was a "prosecutor" within the meaning of the statute, it requires no further discussion; if, however, the pleader intended, by including this averment in the first plea, to charge that the indictment was founded upon incompetent testimony, the plea would fail for duplicity. *Findley* v. *People,* 1 Mich. 234, where it is held that a plea which states several distinct facts having no relation or dependence upon each other is bad for duplicity.

The mere fact that incompetent, improper, and irrelevant testimony was received and considered by the grand jury is not fatal to the indictment, unless such testimony is the only testimony considered by them.

*People* v. *Lauder*, 82 Mich. 109 (46 N. W. 956), and cases there cited and discussed.

The second, third, fourth and fifth pleas in abatement are not discussed by counsel for respondent.

The sixth plea in abatement is argued by counsel for respondent, but the argument refers rather to the use of the testimony given by respondent in the bankruptcy proceeding before the grand jury than to the fact that respondent himself was required to give testimony before the grand jury which is the gravamen of the plea. The same point was raised in the case of *People* v. *Lauder, supra,* and was there passed upon contrary to the contention of the respondent.

With reference to the seventh plea in abatement, it is sufficient to say that the matter urged as an objection to the validity of the action of the grand jury is outside the provisions of the statute, and cannot be considered on a motion to quash the indictment.

It is argued on behalf of respondent that the court erroneously refused to direct a verdict for defendant at the close of the people's case upon the ground that there was no evidence upon which the jury could properly predicate a verdict of "guilty." Of course if there was any evidence of respondent's guilt, its weight and sufficiency were for the jury. *People* v. *Eaton*, 59 Mich. 559 (26 N. W. 702). The statute under which respondent was indicted (section 11565, 3 Comp. Laws [3 Comp. Laws 1915, § 15310]) provides:

"If any officer, agent, clerk, or servant of any incorporated company, or of any city, township, incorporated town, or village, school district, or other public or municipal corporation, or if any clerk, agent, or servant of any private persons, or of a copartnership, except apprentices and other persons under the age of sixteen years, shall embezzle or fraudulently dispose of or convert to his own use, or shall take or secrete with intent to embezzle and convert to his own use, without consent of his employer or master, any

money or other property of another, which shall have come to his possession, or shall be under his charge by virtue of such office or employment, he shall be deemed by so doing, to have committed the crime of larceny."

After a careful examination of the record in this case we are unable to agree with the contention of counsel for respondent that it contains no evidence tending to prove that the moneys taken and received by the respondent from the Michigan Buggy Company under the guise of "salary" were so taken knowingly and wilfully, and with the deliberate intention of embezzling them. It would avail nothing to point out the evidential matter which in our opinion justifies this conclusion.

Reference is made to the preceding statement of facts. It should be said in this connection, however, that some of the facts stated may rest upon the admission of incompetent testimony, which will be hereinafter discussed, but with the elimination of these there still remains sufficient, in our opinion, to carry the case to the jury.

Section 7, par. 9, chap. 3, of the bankruptcy act (Act July 1, 1898, chap. 541, 30 U. S. Stat. 548, 1 Fed. Stat. Annotated, p. 560) provides that it is the duty of the bankrupt to—

"submit to an examination concerning the conducting of his business, the cause of his bankruptcy, his dealings with his creditors and other persons, the amount, kind, and whereabouts of his property, and, in addition, all matters which may affect the administration and settlement of his estate; *but no testimony given by him shall be offered in evidence against him in any criminal proceeding.*"

It will be remembered that in the bankruptcy proceeding involving the affairs of the Michigan Buggy Company the respondent was examined, and that during the period covered by his examination he was vice president and a director of the bankrupt corporation.

Upon his trial in the case at bar the people offered in evidence his testimony given in the bankruptcy proceeding. Strenuous objection was made on behalf of the respondent to its reception, but it was received, and much of it was read to the jury. To this action by the court respondent duly excepted.

On behalf of the people it is argued that respondent is not the bankrupt, and therefore that the provision of the statute does not apply to his testimony. On the other hand, counsel for respondent insist that, as corporations can act only through their officers who are natural persons, a reasonable interpretation of the statute would include officers of bankrupt corporations within the term "bankrupt." With this view of the statute we are inclined to agree. The purpose of the statute would seem to be to secure from the bankrupt all information with reference to the bankrupt estate which would facilitate its orderly and economic administration. If the testimony of officers of bankrupt corporations may afterwards be used against them in criminal proceedings growing out of facts involved in the bankruptcy, they will be found reluctant to testify, and probably relying upon their constitutional privileges in refusing to testify. Under this view it follows that the admission of the testimony given by respondent in the bankruptcy case was erroneous, and we are unable to say that such error was without prejudice, although without the use of such testimony the jury might have reached the same result. Upon the trial Frank B. Lay, Sr., and Victor L. Palmer were both called as witnesses by the people. Both declined to testify as to facts within their knowledge concerning the charge against respondent, claiming constitutional privilege. Respondent himself did not take the stand, but, as before pointed out, his testimony, taken in the bankruptcy proceeding, was read.

During the argument of the prosecuting attorney to the jury the following occurred. He said:

"I have not a word to say about this respondent or Mr. Palmer testifying here, but I do have a word to say about this. *   *   *

"*Mr. Irish:* I except to that part of the argument.

"*The Court:* I will say that the prosecuting attorney has no right to comment upon the failure of the accused to testify, and he should refrain from making any comment or any suggestion of any sort relative to the failure of the respondent to testify, and the jury will disregard the same absolutely.

"And, again, if this salary proposition that is here in question was operated only (openly), legally, and above board, why haven't the facts been put on here by those witnesses who refused to testify, who knew considerable about it.

"*Mr. Irish:* We except to that, we are not responsible for that.

"*The Court:* That is true, the respondent is not responsible for his father's failure to testify, or Mr. Palmer's either.

"*Mr. Frazer:* We ask the court to instruct the prosecuting attorney that he has no right to talk about that to the jury.

"*The Court:* The refusal of Mr. Palmer or F. B. Lay, Sr., to testify, in and of itself, can raise no presumption against the respondent.

"*Mr. Frazer:* Give me an exception.

"And again: After we have brought all this before you, are you going out and say that this respondent is not guilty of improperly and illegally taking the funds of this company?

"*Mr. Irish:* I would like to save the point as to the remarks of the prosecuting attorney giving his opinion."

Other remarks of the prosecuting attorney or his assistant were made in the course of the argument, referring to the fact that two of the witnesses, Lay, Sr., and Palmer had stood on their constitutional privi-

lege. The statute (section 10211, 3 Comp. Laws [3 Comp. Laws 1915, § 12552]) provides:

> "That a defendant in any criminal case or proceeding shall only at his own request be deemed a competent witness, and his neglect to testify shall not create any presumption against him, nor shall the court permit any reference or comment to be made to or upon such neglect."

This statute and alleged breaches of it have been under consideration by this court in the following cases: *People* v. *Evans,* 72 Mich. 367 (40 N. W. 473); *People* v. *Payne,* 131 Mich. 474 (91 N. W. 739); *People* v. *Hammond,* 132 Mich. 422 (93 N. W. 1084); *People* v. *Cahill,* 147 Mich. 201 (110 N. W. 520); *People* v. *Mitchell,* 164 Mich. 583 (129 N. W. 698); *People* v. *Peterson,* 166 Mich. 10 (131 N. W. 153). In all these cases remarks of the prosecuting attorney with reference to the failure of the accused to take the stand were held to constitute reversible error. In the case at bar the record discloses no remarks on the part of counsel for respondent which would tend to excuse or justify the criticism of the prosecuting attorney. The statute does not prohibit reference to the fact that witnesses other than the accused have failed to testify, though in our opinion such reference might well have been omitted. Many assignments of error are based upon the charge of the court. Certain isolated sentences, taken alone, may be subject to criticism, but, as a whole, the charge is full, fair, and, in our opinion, carefully preserved every substantial right of the respondent.

Because of the errors pointed out, the judgment is reversed, and a new trial ordered.

STONE, C. J., and KUHN, OSTRANDER, MOORE, STEERE, and PERSON, JJ., concurred. BIRD, J., did not sit.