## KOLBRENNER et al. v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. February 4, 1926. Rehearing Denied March 5, 1926.)

### No. 4487.

1. **Conspiracy** &#9758;43(5)—**Allegation that defendants sold stock at reduced prices and converted proceeds held sufficient allegation of overt act in indictment for conspiracy to conceal assets.**

In prosecution against members of bankrupt corporation for conspiracy to conceal assets, allegation that defendants sold large amounts of merchandise at reduced prices and converted proceeds before bankruptcy *held* sufficient allegation of overt act, as against general demurrer and motion to quash indictment.

2. **Conspiracy** &#9758;43(5)—**In considering demurrer and motion to quash indictment for conspiracy, where one overt act is sufficient, others may be disregarded.**

Where one overt act alleged in indictment for conspiracy is sufficient, the other counts may be disregarded, in considering demurrer and motion to quash indictment.

3. **Indictment and information** &#9758;176—**Overt acts occurring after bankruptcy need not be pleaded and proved in prosecution against members of bankrupt corporation for conspiracy to conceal assets.**

In prosecution against members of bankrupt corporation for conspiring together and with bankrupt to conceal certain assets of corporation, it is not necessary to plead and prove overt acts occurring after bankruptcy.

4. **Conspiracy** &#9758;27—**Conspirators may be punished, if act done in furtherance of conspiracy, whether crime or not, although object of conspiracy is not accomplished.**

If a conspiracy is once formed, and any act, whether a crime or not, is done in furtherance of it, the conspirators may be punished, although object of the conspiracy is not accomplished.

5. **Witnesses** &#9758;269(2)—**In prosecution for conspiracy to conceal assets, cross-examining defendant concerning testimony at first meeting of creditors of bankrupt was within sound discretion of trial court, if evidence was properly admitted.**

In prosecution against members of bankrupt corporation for conspiracy to conceal assets, cross-examination of defendant as to testimony given by him at meeting of creditors was within sound discretion of trial court, if such testimony was properly admitted, notwithstanding it was not evidence of witness given in chief.

6. **Bankruptcy** &#9758;242(2)—**Testimony of member of bankrupt corporation at meeting of creditors is not privileged, and may be used in later criminal prosecution against him (Bankruptcy Act, §§ 7, 21 [Comp. St. §§ 9591, 9605]; Const. Amend. 5).**

Testimony given by member of bankrupt corporation at meeting of creditors was not privileged, under Bankruptcy Act, § 7 (Comp. St. § 9591), and could be used against him in later criminal prosecution, in view of Bankruptcy Act, § 21 (Comp. St. § 9605), under which he was examined, which granted him no privileges, as he could have invoked protection of Fifth Amendment to the Constitution.

7. **Witnesses** &#9758;305(1).

Protection of Const. Amend. 5, as to privilege of witnesses, is personal, and is considered waived, if not invoked.

8. **Criminal law** &#9758;829(1)—**Special charges, covered by general charge, held properly refused.**

In prosecution against members of bankrupt corporation for conspiracy to conceal assets, special charges, fully covered by general charge, were properly refused.

9. **Conspiracy** &#9758;43(12)—**Evidence of overt act, committed by one defendant and alleged to have been committed by another, is admissible.**

In prosecution against members of bankrupt corporation for conspiracy to conceal assets, evidence that one of defendants had committed overt act, which had been alleged to have been committed by another defendant was admissible to show an overt act.

10. **Conspiracy** &#9758;43(12)—**Any act of conspirators occurring during life of conspiracy is admissible for purpose of proving it, and government is not limited to proving overt acts alleged.**

Government is not limited to proving overt acts alleged in indictment for conspiracy. but can show any act of conspirators occurring during life of conspiracy, for purpose of proving it.

11. **Criminal law** &#9758;400(8)—**Deposit slips and ledger pages of bank account admissible to show failure to deposit checks and cash, as charged in indictment for conspiracy to conceal assets.**

In prosecution against members of bankrupt corporation for conspiracy to conceal assets, deposit slips and ledger pages of the bank account, produced by official of bank, were admissible to show failure to deposit checks and cash, as charged in indictment.

12. **Criminal law** &#9758;400(8)—**Testimony as to contents of bankrupt's books by trustee properly admitted in prosecution for conspiracy to conceal assets.**

In prosecution against members of bankrupt corporation for conspiracy to conceal assets, testimony as to contents of books of bankrupt by trustee was properly admitted.

13. **Criminal law** &#9758;400(8).

One familiar with books of account may testify regarding them, for purpose of facilitating jury in their inquiry.

In Error to the District Court of the United States for the Northern District of Texas; Wm. H. Atwell, Judge.

Jack C. Kolbrenner and others were convicted of conspiring to conceal certain assets of a bankrupt corporation, and they bring error. Affirmed.

Certiorari denied 46 S. Ct. 489, 70 L. Ed. —.

Harry Tom King and E. M. Overshiner, both of Abilene, Tex. (Kirby, King & Overshiner, of Abilene, Tex., on the brief), for plaintiffs in error.

Henry Zweifel, U. S. Atty., and Jesse E. Martin, Asst. U. S. Atty., both of Fort Worth, Tex.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. Plaintiffs in error, Art Kolbrenner, Jack Kolbrenner, and Menard Kolbrenner, hereafter called defendants, were the sole stockholders and officers of Kolbrenner Bros., Inc., which corporation was engaged in the retail shoe business, with stores at Cisco, Eastland, and Abilene, Tex. On December 6, 1921, a voluntary petition in bankruptcy was filed by the corporation, it was adjudicated bankrupt, and in due course a trustee was appointed. An indictment was returned on October 9, 1924, charging defendants with conspiring together, and with the bankrupt, to conceal certain assets of the corporation, and on this they were convicted and sentenced.

Some 50-odd errors are assigned, but, as is usual with such a multiplicity of assignments, only a few of them need be considered. A pleading, termed a demurrer and motion to quash, was filed to the indictment and overruled. Twenty-three assignments run to this, most of them wholly frivolous.

The indictment is inartificially drawn and somewhat diffuse, but, stripped of surplusage, it clearly charges a conspiracy between defendants and the bankrupt, beginning on July 1, 1921, and continuing until October 9, 1924, the date of filing the indictment, to conceal certain described diamonds, valued at $7,500, a part of a stock of shoes, and a large sum of money, from the trustee. As overt acts to effect the object of the conspiracy, the indictment alleges: (1) That on August 1, 1921, Art Kolbrenner took the said diamonds to Fort Worth and pawned them with one Gilbert; (2) that on October 1, 1921, Art Kolbrenner gave one Bodkey $1,500 with which to redeem the diamonds; (3) that on October 7, 1921, Art Kolbrenner went to Fort Worth and received the diamonds from Bodkey; (4) that on November 1, 1921, the three defendants (naming them) sold large amounts of stock and shoes at greatly reduced prices, and converted the proceeds to their own use and benefit; (5) that on September 15, 1921, and at various times between that date and December 5, 1921, Jack Kolbrenner instructed one Hoffman, a clerk, to convert all checks received into cash and turn the money over to defendants (naming them); (6) that on September 15, 1921, defendants received large amounts from said Hoffman; (7) that on December 6, 1921, Jack Kolbrenner filed the petition in bankruptcy; (8) that on December 6, 1921, Jack Kolbrenner prepared and filed schedules on which were not listed the said diamonds and money previously concealed; (9) that on December 20, 1921, Art Kolbrenner testified at the first meeting of creditors that he had pawned the diamonds to Gilbert, and had subsequently sold the pawn ticket to one Dunman, who had redeemed them.

No attack is made on the form of the indictment. It is contended, however, that it is necessary to allege overt acts occurring after bankruptcy and within three years of the filing of the indictment, and that for various reasons the eighth and ninth overt acts alleged could not be considered acts in furtherance of the conspiracy.

[1-4] It will be noted that the fourth overt act is alleged to have been done within three years of the filing of the indictment, and it is apparent it would be effective in furtherance of the conspiracy. For the purpose of considering the demurrer and motion to quash, the others may be disregarded. Conceding that, in charging a continuing conspiracy to conceal assets from a trustee in bankruptcy, begun more than three years before the returning of the indictment, it is necessary to allege an overt act within the period of limitation, it does not follow that acts occurring after bankruptcy must be pleaded and proved. It is well settled that if a conspiracy is once formed, and any act, whether itself a crime or not, is done in furtherance of it, the conspirators may be punished, although the object of the conspiracy is not accomplished. U. S. v. Rabinowich, 35 S. Ct. 682, 238 U. S. 78, 59 L. Ed. 1211. The demurrer and motion to quash was properly overruled.

At the first meeting of creditors, in December, 1921, Art Kolbrenner, one of the defendants and secretary and treasurer of the corporation, was called as a witness and testified, in substance, referring to the diamonds alleged to have been concealed, that they had been pawned to one Gilbert, of Fort Worth, for $1,500, and the ticket was subsequently sold to one Dunman, of Ranger, for $200; that Dunman had redeemed the diamonds from Gilbert, and then had them; that they did not belong to Kolbrenner Bros., and all they got for them was $1,700.

The government was permitted to prove

the giving of this testimony over the objection of the defendants. After the close of the government's case this defendant took the stand in his own behalf, and counsel for the government was permitted to cross-examine him on the testimony before the referee. This was also objected to. The same situation is presented with regard to certain testimony of Jack Kolbrenner introduced in evidence. The assignments running to these rulings present the most serious questions in the case.

At the trial the government introduced testimony tending to show that the diamonds were worth $8,200; that in September, 1921, after the diamonds had been pledged, Jack Kolbrenner went to Fort Worth and gave one Bodkey $1,500 in bills of small denomination and asked him to redeem the diamonds. Bodkey did so, and in turn delivered them to Art Kolbrenner. Dunman was not produced, and his whereabouts were unknown, and both Bodkey and Gilbert denied having ever seen him.

[5] It is clear that the testimony of Art Kolbrenner, above referred to, was relevant to prove the ninth overt act alleged, and to prove the conspiracy. If it was properly admitted, it was within the sound discretion of the trial court to permit cross-examination, based on it, when he took the stand, notwithstanding it was not evidence of the witness given in chief. Rea v. Missouri, 17 Wall. 532, 21 L. Ed. 707.

The main objection, however, is that the testimony given in the bankruptcy proceedings was privileged under the provisions of section 7 of the Bankruptcy Act (Comp. St. § 9591) on the theory that the policy of the law is to facilitate an inquiry into the affairs of the bankrupt, and no distinction should be made between a bankrupt corporation and its officers. In support of this defendants rely on the decision of the Supreme Court of Michigan in People v. Lay, reported in 159 N. W. 299, 193 Mich. 17, L. R. A. 1917B, 608. That case is in point, but we are not disposed to follow it.

[6, 7] It may be that the administration of the affairs of bankrupt corporations would be facilitated by a provision giving the same privilege to the testimony of their officers as is given to an individual bankrupt, but Congress has not done so. Privileges such as this are stricti juris, and not to be extended by analogy, or by attempting to enforce the spirit, while disregarding the letter, of the law. There is a clear distinction between the bankrupt and the defendant in this case. He was not called to testify under the provisions of section 7, but was examined by virtue of section 21, of the Bankruptcy Act (Comp. St. § 9605). He was granted no privilege by the act, and could have invoked the protection of the Fifth Amendment of the Constitution. McCarthy v. Arndstein, 45 S. Ct. 16, 266 U. S. 34, 69 L. Ed. 158. At the bankruptcy hearing defendant was represented by counsel, did not claim his constitutional privilege, and testified without objection. It is elementary that the protection of the Fifth Amendment is personal, and is considered waived, if not invoked. Brown v. Walker, 16 S. Ct. 644, 161 U. S. 591, 40 L. Ed. 819. It was not error to admit this testimony. What has been said above applies with equal force to the testimony and cross-examination of Jack Kolbrenner.

[8] Defendants assign 12 errors to the refusal of special charges requested. There was no objection to the general charge, and it is doubtful that the objections to the refusal of the special charges were sufficiently brought to the attention of the court. Some of them run to the admission of the testimony given in the bankruptcy proceedings above referred to, and one was to the effect that the prosecution was barred by limitation. They were properly refused. The others were covered by the general charge, which fully and fairly stated the law. There was no error in refusing to give any of the special charges.

Defendants moved for directed verdicts at the close of the government's case, and again at the close of all the evidence. There was sufficient evidence to support the verdict.

[9, 10] The second overt act charged that Art Kolbrenner had given the money to Bodkey to redeem the diamonds, and the testimony introduced tended to show that Jack Kolbrenner had committed that act. Objection was made to the evidence on the ground of variance. The objection was good on that ground, but the evidence was nevertheless admissible to show an overt act. The government was not limited to proving the overt acts alleged in the indictment, but could show any act of the conspirators, occurring during the life of the conspiracy, for the purpose of proving it.

[11] Defendants objected to the admission of certain deposit slips and the ledger pages of their bank account, which were produced by an official of the bank. These documents were sufficiently identified, and were admissible to show a failure to deposit checks and cash received in the usual course of business, as charged in the indictment.

[12, 13] In the course of the trial the trustee produced the books of the bankrupt and tes-

tified as to their contents and as to what was not shown. It is settled that one familiar with books of account may testify regarding them, for the purpose of facilitating the jury in their inquiry. In fact, the rule goes much farther than the application here. Burton v. Driggs, 20 Wall. 125, 22 L. Ed. 299. We find no error in the record.

Affirmed.