**UNITED STATES of America, Appellee,**

v.

**Howard COYNE, Defendant-Appellant.**

**No. 1230, Docket 77–1434.**

United States Court of Appeals, Second Circuit.

Argued Aug. 18, 1978.

Decided Nov. 14, 1978.

---

Robert P. Freedman, Buffalo, N. Y., for defendant-appellant.

Carol C. White, North Tonawanda, N. Y. (Richard J. Arcara, U. S. Atty., Western District of New York, Edward J. Wagner and William M. Skretny, Asst. U. S. Attys., Buffalo, N. Y., of counsel), for appellee.

Before VAN GRAAFEILAND, Circuit Judge, and DOOLING * and COFFRIN,** District Judges.

DOOLING, District Judge:

The present appeal requires a determination of whether the principal officer of a bankrupt corporation who testifies without explicit compulsion to do so at the first meeting of the bankrupt's creditors is entitled to claim the use immunity provided by Section 7a(10) of the Bankruptcy Act (11

U.S.C. § 25(a)(10)) for testimony given by bankrupts at the first meeting of creditors.

Section 7, in which the use immunity is included, outlines the duties of the bankrupt. The enumerated duties include attendance at the first meeting of creditors, examining and reporting to the trustee about the correctness of the proofs of claim filed against the bankrupt, executing such papers as the court directs, preparing and filing a schedule of the bankrupt's property and a list of the bankrupt's creditors, including the amounts of the claims and the security, if any, for them, and filing before the first meeting of creditors a statement of the bankrupt's affairs. Section 7(a) then provides that

"The bankrupt shall . . . (10) at the first meeting of his creditors . . submit to an examination concerning the conducting of his business, the cause of his bankruptcy, his dealings with his creditors and other persons, the amount, kind, and whereabouts of his property, and, in addition, all matters which may affect the administration and settlement of his estate or the granting of his discharge; but no testimony, or any evidence which is directly or indirectly derived from such testimony, given by him shall be offered in evidence against him in any criminal proceeding . . ."

Section 7a is drawn in language applicable to natural persons who become bankrupt. Section 7b provides that

"Where the bankrupt is a corporation, its officers, the members of its board of directors or trustees or of other similar controlling bodies, its stockholders or members, or such of them as may be designated by the court, shall perform the duties imposed upon the bankrupt by this act."

In this case appellant, the bankrupt's president, testified at the first meeting of creditors without having been explicitly designated by the bankruptcy judge to perform any duty imposed upon the bankrupt by the

* Of the United States District Court for the Eastern District of New York, sitting by designation.

** Of the United States District Court for the District of Vermont, sitting by designation.

Bankruptcy Act. Does the statute require such a designation as a condition precedent to claiming the protection of Section 7a(10)?

The legislative history is meagre. A clause granting a use immunity appeared as Section 7(9) of the 1898 Act (30 Stat. 548). Section 7(9), however, although it required the bankrupt to testify *if* he was present at the first meeting of creditors, did not require the bankrupt to attend the first meeting unless directed to do so by the court or judge; moreover, Section 7(9) granted immunity from the use of the testimony, but contained no provision for excluding from evidence material derived from testimony given during the first meeting of creditors. And the 1898 Act had no provision similar to the present Section 7b.

The Chandler Act of 1938, revising the '98 Act, added subsection b to Section 7 and amended what now became Section 7a(1) and (10) so as to make the bankrupt's attendance at the first meeting of creditors mandatory, and to make unqualified the bankrupt's duty to submit to examination at that meeting (52 Stat. 847). The Senate report on the amendments (S.Rep.No.1916, 75th Cong. 3d Sess. 12–13 (1938)) observed:

> "The bill clarifies the provisions prescribing the duties of bankrupts and makes additional requirements. The bankrupt is required to attend the first meeting of his creditors and the hearing upon the objections to his discharge. . .
> The bill makes examination mandatory at the first meeting of creditors and at the hearing upon objections to discharge . . . .
>
> "In the case of bankrupt corporations, its officers, directors, stockholders, and like persons may be required to perform the duties imposed upon the bankrupt corporation."

The House report (H.R.Rep.No.409, 75th Cong. 1st Sess. 25, 26 (1937)) similarly explained:

> The requirements that the bankrupt shall attend the first meeting of creditors in all cases instead of "if directed by the court or a judge thereof to so do" and submit to examination, also that the trustee shall examine the bankrupt at the first meeting of creditors, at the hearing upon objections, if any, to discharge and at such other times as the court shall order and that the bankrupt shall be publicly examined are certainly salutary. It has been considered wise to exclude from the immunity of the testimony of the bankrupt that testimony which he gives upon his discharge proceeding. If he refuses to answer at the discharge hearing a material question upon the ground that it might tend to incriminate him, then he should be denied the privilege of a discharge.

\*　　\*　　\*　　\*　　\*　　\*

> "Where the bankrupt is a corporation its officers or members may be required by the court to perform the duties imposed upon a bankrupt individually, a salutary provision remedying a present defect."

Section 47a (11 U.S.C. § 75(a)) was amended by the Chandler Act (52 Stat. 860) to impose on the trustees of the bankrupts the obligation to examine the bankrupts at the first meetings of creditors unless they had already been fully examined by the referees, receivers or creditors. The Chandler Act left the use immunity unchanged. It was not amended to proscribe the use of evidence directly or indirectly derived from the testimony given at the first meeting of creditors until 1970. Section 207 of the Organized Crime Control Act of 1970 made that addition at the same time that the use immunity sections of several other statutes were similarly amended (84 Stat. 929).

The bankrupt, Sleep Shops Corporation, had operated retail furniture stores at three locations in the Buffalo area from April 1970 until about June 13, 1972. On April 8, 1972, one of its stores, which included the firm's warehouse, was destroyed by fire; on June 13, 1972, one of the stores, the store in which the corporation's books and records were kept, was reportedly burglarized, and the books and records of the company, but no other property, were, reportedly, stolen from it; and on July 19, 1972, the corporation was petitioned into bankruptcy. Apparently adjudication followed shortly afterward.

Defendant-appellant Howard Coyne and his wife were the principal stockholders of the bankrupt corporation and its principal officers; appellant Howard Coyne was the president. There were two other stockholders of the corporation, but the appellant and his wife owned a majority of the stock. Appellant signed the bankrupt corporation's schedules in bankruptcy, one of the duties imposed on the bankrupt by Section 7a.

At the first meeting of the bankrupt's creditors on September 19, 1972, the appellant was present and the proceedings before the bankruptcy judge commenced in the following manner:

"The Court: First Meetings. First matter on the Calendar. Sleeps Shops Corporation.

Mr. Ginsberg, Mr. Privitera, you are appearing for the Bankrupt?

Mr. Ginsberg: Yes.

The Court: Is an officer of the Bankrupt present?

Mr. Ginsberg: Yes.

The Court: All right, please take the stand.

Please place your left hand on the Bible and raise your right hand. Do you swear to tell the truth, the whole truth and nothing but the truth, so help you God?

Howard Coyne: Yes sir.

The Court: Please be seated.

Counsel, the Schedules A–1 and 2 of the Court's copy have not been executed will you see that those are executed?

Mr. Ginsberg: Yes."

The bankruptcy judge then conducted the first part of the examination, asking appellant whether the schedules of the bankrupt accurately reflected all of its creditors when the corporation ceased doing business, what stores the bankrupt had operated, when its last inventory was taken, how much of the inventory had been in each of the three stores and the warehouse, the amount of rent paid in each of the three stores, the amount of insurance coverage, whether the schedules accurately reflected all of the bankrupt's property, what motor vehicles the bankrupt owned, what if any property of the bankrupt had been transferred to any third party, the extent of liens on the bankrupt's property, and the existence and occasion of an assignment that the bankrupt had made of the claims under the insurance policies covering the April 8th fire loss. There was further extended examination of the appellant by the attorney for the principal creditors of the bankrupt. At the conclusion of that questioning the attorney for the principal creditors asked for the formal adjournment of the first meeting of creditors for ten days, and requested the court to direct Mr. Coyne to appear at the adjourned meeting unless counsel notified him not to do so. The court closed the meeting by stating on the record,

"I'll adjourn the first meeting until the 3rd of October at 10:00 and direct that the bankrupt's officer, Mr. Coyne, reappear for further examination at that time. I will direct, of course, that books and records in possession of Mr. Coyne or which he has knowledge be turned over to the Trustee."

On October 3, 1972, the appellant was again examined by the attorney for the principal creditors who had become as well the attorney for the trustee in bankruptcy. The examination was in part directed to throwing doubt on the reality of the reported burglary of books and records, and in part directed to ascertaining the disposition of borrowed funds and of the inventories of furniture at the two stores which continued to operate after the April 8th fire at the third store and warehouse. At the conclusion of the hearing the attorney for the trustee asked the court's permission to refer the matter to the Department of Justice for an "FBI Investigation". The transcript continued:

"The Court: Are you going to order a transcript from this morning?

Mr. Wiltse: I am definitely ordering one.

The Court: Well, then, I will direct, Mr. Wiltse, that you report facts to the U.S. Attorney under [18 USC § 3057] and also require that you furnish to me that report in triplicate.

\*　　\*　　\*　　\*　　\*　　\*

I would assume that it wouldn't be necessary to have that transcript included with the report. The original can remain on file and—

Mr. Wiltse: No, I can summarize the information in letter form and keep the Exhibits available but I would like to have this testimony out as quickly as possible."

An investigation of some extent followed, and evidence was presented to the grand jury. The last part of the testimony presented to the Grand Jury consisted in the playing of the tape recording of the appellant's testimony at the first meeting of creditors. The indictment, in thirteen counts, was found on February 27, 1974.

Appellant first moved to dismiss the indictment on the ground that it had been obtained through the use of appellant's testimony at the first meeting of creditors in violation of the command of Section 7a(10) of the Bankruptcy Act. That motion was denied. *Cf. United States v. Blue*, 1966, 384 U.S. 251, 255, 86 S.Ct. 1416, 16 L.Ed.2d 510; *United States v. Calandra*, 1974, 414 U.S. 338, 344–345, 94 S.Ct. 613, 38 L.Ed.2d 561; *United States v. Dornau*, 2d Cir. 1974, 491 F.2d 473, 481, fn. 15. Appellant then moved to suppress the use in evidence of the record of the appellant's testimony at the first meeting of creditors. Passing the question whether the use immunity of Section 7a(10) was automatically available to a witness who did not claim the privilege against self-incrimination, Judge Curtin concluded, in the light of *United States v. Castellana*, 2d Cir. 1965, 349 F.2d 264, that since appellant had not been designated by the bankruptcy judge to perform the duties imposed upon the bankrupt by the Bankruptcy Act as contemplated by Section 7b, appellant was not entitled to the protection of Section 7a(10); Judge Curtin noted that appellant's counsel had neither claimed the protection of Section 7a(10), nor asserted appellant's Fifth Amendment right not to testify. At the heart of Judge Curtin's decision is the combined inference of fact and conclusion of law that

"Where, as happened here, the Bankruptcy Judge merely asks who is appearing for the bankrupt corporation, and an officer voluntarily takes the stand and testifies, we would be straining language and circumstances to interpret these acts as a 'designation' sufficient to confer immunity under § 25(b)."

After the denial of the motion the defendant, reserving his right to appeal the order denying suppression, entered a plea of guilty to Count III of the indictment, charging the fraudulent concealment from the trustee of the bankrupt of a check for $5,000 drawn on a Chicago bank and of the proceeds of the check, and Count IX, charging that appellant falsely swore in the Statement of Affairs of the Bankrupt that it had no cash on hand; both charges were under 18 U.S.C. § 152.

The appeal from the judgment of conviction presents for review Judge Curtin's decision declining to suppress the use in evidence of the appellant's testimony at the first meeting of creditors. See as to the right to appeal *United States v. Burke*, 2d Cir. 1975, 517 F.2d 377; *United States v. Fury*, 2d Cir. 1977, 554 F.2d 522, 524 fn. 2.

The law under what is now Section 7a(10) of the Bankruptcy Act developed in three phases. From the first enactment of the use immunity language in the 1898 Act as Section 7(9) until 1938 when subsection b was added, the cases dealt with the scope and effect of the use immunity, certain constitutional questions, and its application to bankrupt corporations and their officers. From 1938 until 1970, when the use immunity was broadened to protect the bankrupt from the use against him of evidence derived from his testimony under Section 7a(10), the cases were concerned with the relation between Section 7a(10) and the new subsection b. In the final stage, following the broadening of the immunity in 1970, the few decided cases have considered the effect of the compulsion to testify brought about by the broadening of the use immunity.

It was early made plain that Section 7(9), as originally enacted, granted only a use

and not a transactional immunity (*Burrell v. Montana*, 1904, 194 U.S. 572, 24 S.Ct. 787, 48 L.Ed. 1122), and that, despite the seemingly broad prohibitory language of the subsection, a bankrupt giving false testimony while under examination before a referee under Section 7(9) could be indicted for perjury notwithstanding that the statute did not explicitly reserve the government's right to indict for perjury. *Glickstein v. United States*, 1911, 222 U.S. 139, 32 S.Ct. 71, 56 L.Ed. 128. In *Ensign v. Pennsylvania*, 1913, 227 U.S. 592, 33 S.Ct. 321, 57 L.Ed. 658, the court held that Section 7(9) did not prevent the use in evidence against a bankrupt of the schedules which he had signed in his bankruptcy proceeding, the court saying (227 U.S. at 599, 33 S.Ct. at 323):

> "But as a matter of mere interpretation, we deem it clear that it is only the testimony given upon the examination of the bankrupt under clause 9 that is prohibited from being offered in evidence against him in a criminal proceeding."

See to the same effect *Cameron v. United States*, 1914, 231 U.S. 710, 719, 34 S.Ct. 244, 58 L.Ed. 448. And *Arndstein v. McCarthy*, 1920, 254 U.S. 71, 41 S.Ct. 26, 65 L.Ed. 138, confirmed, what the lower federal courts had much earlier held (*e. g., In re Scott*, W.D.Pa., 1899, 95 F. 815; *In re Rosser*, E.D.Mo.1899, 96 F. 305), that is, that the use immunity granted by Section 7(9) did not afford the complete protection required by the Fifth Amendment and, in consequence, bankrupts could not be compelled to testify in their bankruptcy proceedings; the testimony involved in *Arndstein* was given under Section 21a before Commissioners in Bankruptcy and not under Section 7(9), but the court appears to have considered the case as though the testimony had been given under Section 7(9).

One fairly early state court decision had held that the testimony of an officer and director of a bankrupt company given in the corporation's bankruptcy proceeding could not be offered in evidence against him in a criminal prosecution because of the bar of Section 7(9). *People v. Lay*, 1916, 193 Mich. 17, 159 N.W. 299, 303.[1] A contrary result was reached in *Kaplan v. United States*, 2d Cir. 1925, 7 F.2d 594. The court there held that testimony given by the officers of a bankrupt corporation in the corporate bankruptcy proceeding could be used in evidence against them at the trial of an indictment arising out of the bankrupt corporation's affairs. Judge Learned Hand said (7 F.2d at 597):

> "Not being themselves bankrupts, they were not protected by section 7(9) of the act . . . and their admissions were competent against them upon the trial of an indictment, as in a civil cause. Had they wished to remain mute, no doubt they might have done so; but, having once consented to speak, any privilege was at an end."

Similarly in *S. Ginsberg & Sons v. Popkin*, 1932, 285 U.S. 204, 52 S.Ct. 332, 76 L.Ed. 704, the Court held that the absconding president of a bankrupt corporation was neither subject to arrest under Section 10a of the Act (11 U.S.C. § 28(a)) nor exempt from arrest under civil process under Section 9 of the Act (11 U.S.C. § 27) since he was not the bankrupt. The court there, however, relieved the corporate president from civil arrest and subjection to a writ of *ne exeat* on the assumption that Congress would not have intended to subject officers of bankrupt corporations or other witnesses to arrests and detentions against which the Bankruptcy Act protected bankrupts.

Before the 1938 Amendment, then, testimony given under Section 7(9) was voluntary in the case of individual bankrupts, and, strictly speaking, the officers of a corporation, since none of them was the bankrupt, could not give testimony under Section 7(9); if they testified under Section 21a, their testimony was necessarily voluntary since the privilege against self-incrimination was available to them, just as it was available to the bankrupt when he was called to testify under Section 7(9)—because of the narrowness of the use immunity.

---

**1.** *Kolbrenner v. United States*, 5th Cir. 1926, 11 F.2d 754, 756, declined to follow the *Lay* case.

After subsection b was added to Section 7 in 1938 the distinction between the bankrupt corporation and its officers was preserved. The language of *In re Bush Terminal Co.*, 2d Cir. 1939, 102 F.2d 471, is illustrative. There an order was made directing a man who had been a stockholder and director of the terminal company until a date about five years preceding the bankruptcy to testify under Sections 7 and 21 of the Act. In setting aside the order so far as it directed examination under Section 7 the Court said:

"Section 7 deals with the duties of bankrupts and, while corporate bankrupts must act in the performance of those duties by representatives having authority to perform them for such bankrupts, it does not follow that even those who do act for the bankrupt are to be treated as the bankrupt. For instance, they are not protected under Sec. 7(9).

\* \* \* \* \* \*

"As the bankrupt only is subject to examination under Sec. 7, it follows that one who has no authority to speak for the bankrupt at the time he is required to testify may not be compelled to submit to examination under that section."

However, in *United States v. Weissman*, 2d Cir. 1955, 219 F.2d 837, the Court disapproved the use against a corporate officer in a criminal case of his testimony given under Section 21a. Judge Learned Hand said:

". . . the testimony of Weissman taken under § 21, sub. a, . . . was within the immunity granted by § 7, sub. a(10) . . . The referee had directed him to sign the schedules in bankruptcy, and that brought him within § 7, sub. b, for he so became one of the 'stockholders or members' of [the bankrupt] who was 'designated by the court' to 'perform the duties imposed upon the bankrupt'. We can see no reason for denying to such a person the protection that is given to the bankrupt, obviously for the purpose of insuring a full disclosure of the facts."

The Court did not stop on the circumstance that the testimony was not given under Section 7a(10) at a first meeting of creditors but under Section 21a; it treated the right to claim the protection, even for Section 21a testimony, as made complete by the performance—under the referee's direction—of one of the enumerated duties of the bankrupt. The Court treated the referee's direction to perform a duty of the bankrupt as a designation to perform the bankrupt's duties generally. That was significantly different from requiring that the referee have specifically designated Weissman to perform the duty of testifying at the first meeting of creditors. It suggests that the Court found in the designation to perform one important duty an identification of the corporate representative who could appropriately, if not most appropriately, be regarded as one who spoke and acted as the bankrupt corporation. In the *Weissman* case identification was easy. The bankrupt was one of a group of corporations dominated by Weissman, who manipulated their intercorporate transactions, although Weissman owned no stock of record and held no official title.

It is implicit in the *Weissman* case that testimony given under Section 7a(10), and even under Section 21a, is testimony given in performance of a duty useful to the estate and its creditors, and to an extent is involuntary testimony. But it is also implicit in the case that those in the position of Weissman are not compellable to testify either at the first meeting of creditors or under Section 21a; they plainly have the unembarrassed right to assert the privilege against self-incrimination.

*United States v. Epstein*, E.D.Pa.1957, 152 F.Supp. 583, re-examined the status of an individual bankrupt's testimony given at a special meeting of creditors held pursuant to an order made under Section 21a, and, differentiating it from Section 7a(10) testimony given at the first meeting of creditors, drew attention to *McCarthy v. Arndstein*, 1924, 266 U.S. 34, 45 S.Ct. 16, 69 L.Ed. 158. In that case Mr. Justice Brandeis pointedly emphasized that (266 U.S. at 42, 45 S.Ct. at 17):

"Section 21a, on the other hand,[2] deals specifically and solely with the adjective law—with evidence and witnesses. When the bankrupt appears before a commissioner under this section, he comes, like any other person, merely to testify. In that connection he may, like any other witness, assert the constitutional privilege; because the present statute fails to afford complete immunity from prosecution."

*Goldstein v. United States*, 5th Cir. 1926, 11 F.2d 593, also cited in *Epstein*, concluded that the Section 7(9) use immunity applied only to testimony given under Section 7(9). The *Epstein* case takes the position (152 F.Supp. at 587–588) that testimony given under Section 7a(10) may claim the statutory use immunity, but that the immunity simply does not extend to testimony given under Section 21a; the latter testimony, which might have been refused under the Fifth Amendment privilege, is, if given, "voluntary", and outside the use protection of Section 7a(10).

*United States v. Castellana*, 2d Cir. 1965, 349 F.2d 264, much relied upon by the Government, involved a criminal indictment arising out of the affairs of the bankrupt Murray Packing Co. At the trial the Government offered in evidence testimony given under Section 21a by David Newman, once president of Murray, and by Joseph Weinberg, and also offered the deposition testimony, given in a civil suit, of Stanley Weinberg, Murray's secretary-treasurer, who was office manager, and in charge of bookkeeping, payments and deposits. The dominant figure in the last phase of Murray's existence, however, had been one Pagano, who had withdrawn $747,000 of Murray's cash, had displaced Newman as corporate president, and obtained authorization to sign all Murray checks. None of the testimony offered had been taken at the first meeting of creditors under Section 7a(10), but Newman and Joseph Weinberg nevertheless claimed that Section 7a(10) of the Act barred the use against them of their Section 21a testimony. The Court rejected the contention, saying that the authorities indicated that the testimonial privilege was extended only to those whom the bankruptcy court had directed to perform the bankrupt's duties. The Court said (349 F.2d at 273):

"Under the circumstances of this case, however, it is clear that Newman and Joseph Weinberg were not performing the bankrupt's statutorily-imposed duties when they were examined. It was not their 'duty' to testify in these proceedings, nor were they designated or directed to perform any of the bankrupt's other duties. In any event, the privilege against self-incrimination was available to them and could have been invoked during their testimony in the 21(a) examinations . . . if they determined to do so, thus adequately protecting their rights. . . . It is interesting furthermore that Section 7, sub. b, in merely stating who may be designated to perform the duties imposed upon a corporate bankrupt, makes no explicit reference to extension of the Section 7, sub. a(10) privilege. Thus, we believe that Section 7, sub. b cannot be read in a vacuum and must be considered in the light of Section 7, sub. a as conferring immunity only if the director or shareholder is specifically designated to perform the bankrupt's duties."

In *Castellana* no one—if not Pagano—could be surely identified as the one who could appropriately perform, or who was in fact performing, the duties of the bankrupt. Stanley Weinberg had, indeed, filed the schedules, but his testimony in the bankruptcy proceeding was not offered against him. Newman and Joseph Weinberg had testified, but they could be treated only as Section 21a witnesses unless they could point to a designation of some sort from the bankruptcy judge directing them to act for the bankrupt in performing some duties of the bankrupt, such as the bankrupt's testi-

---

**2.** The Court had observed that a bankrupt must surrender his books and papers even though they may contain incriminating evidence.

monial duties. They could not do so. *Castellana* is, however, clear that what is substantively necessary is that the corporate officer be performing the duties of the bankrupt under the Act, by virtue of designation, or, it would seem, in very fact. The direction or designation may identify a particular corporate officer as "the bankrupt", if need be. But the case does not suggest that there can be no Section 7a(10) use immunity where there has been no designation simply because none was necessary, because, for example, the appropriate corporate officer is unambiguously identifiable and has not sought to avoid responsibility for performing the duties enumerated in Section 7a.[3] The immunity in logic flows from the performance of the Section 7a(10) duty, not from the barren circumstance of designation.

*Castellana* is characterized too by the fact that the testimony was, as the court noted, essentially voluntary testimony, since all of the persons involved possessed but failed to assert the Fifth Amendment privilege.

*United States v. Moss*, 2d Cir. 1977, 562 F.2d 155, marks the difference brought about by the amendment of Section 7a(10). The confused and uncertain condition that prevailed before the 1970 amendment was summed up in *United States v. Goodwin*, 5th Cir. 1973, 470 F.2d 893, 904, in these words:

"If a person chose not to 'stand on the Fifth,' he could claim only as much protection from the use of the testimony adduced as the statute [Section 7a(10)] itself granted. Absent some affirmative granting of immunity by the person taking the testimony, the witness faced two alternatives under the older version of the statute: he could choose to testify freely and then later claim whatever protection the statute afforded; or he could refuse to testify on the grounds that the answers sought might be incriminating."

In contrast the Court said in *United States v. Moss*, 562 F.2d 155 at 163,

"The testimony given by the bankrupt was *compelled* by Section 25(a) of the Bankruptcy Act, as the Government concedes. See *United States v. Dornau*, 491 F.2d 473 (2d Cir. 1974). The compulsion was constitutionally justified only because the use immunity granted, including a prohibition against derivative use, was coextensive with the constitutional privilege against self-incrimination. *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 . . . (1972). The earlier Bankruptcy Act of 1898 did not prohibit derivative use of the bankrupt's testimony and hence was not coextensive with the privilege. . . . Under that statute the prohibition against use of the testimony came into play only if the bankrupt *voluntarily* surrendered his privilege." (Italics in original)

That is, all testimony given before 1938 under Section 7a(10) was, from the very fact that the witness testified and did not stand on his privilege, necessarily voluntary testimony. The Court continued:

"In such circumstances, the prohibition against use of the testimony was not a constitutional prohibition but rather a bargain made in exchange for testimony that could not have been compelled.

\* \* \* \* \* \*

"On the other hand, since under the present Bankruptcy Act section, 11 U.S.C. § 25(a), the bankrupt is *compelled* to testify, the immunity granted must be coextensive with the privilege.

\* \* \* \* \* \*

"This seems to us to mean that the prohibition against the use and derivative

---

**3.** The only representative of the bankrupt who had performed a duty of the bankrupt apparently was Stanley Weinberg, the secretary-treasurer, who had filed the required bankruptcy schedules in his capacity as secretary-treasurer and, as the Court assumed *arguendo*, thus "came within the statutory definition of 'the bankrupt' and thus was entitled to invoke the

Section 7 privilege." None of Stanley Weinberg's Section 21a testimony was offered against him, however. It has been indicated that different persons may be designated to perform different duties of the bankrupt, with the effect of according the use immunity to each. *In re U. S. Hoffman Can Corp.*, 3rd Cir. 1967, 373 F.2d 622, 625–626.

use of the testimony is constitutionally required if the immunity granted is permitted to *compel* the testimony of the bankrupt. Now there is no longer a bargain but a naked compulsion sufficient in scope to preserve the privilege against misuse.

"Since it is a constitutionally required *quid pro quo* to justify the compulsory process against the bankrupt, the prohibition rises to the dignity of a constitutional right rather than a mere bargain as it was under the 1898 Bankruptcy Act. . .

"We think that a waiver in these circumstances requires an intentional relinquishment of a known right by the client rather than by the lawyer."

Testimony taken under Section 7a(10), then, is today unconditionally compelled testimony. There is, however, no reason to doubt that testimony so given under oath may be made the basis of an indictment for perjury if it is false; nothing in the broadening of the use immunity licenses untruth; the reasoning and holding of *Glickstein v. United States, supra,* are unaffected by the statutory change.

It is clear beyond peradventure that Coyne's testimony was given at the first meeting of creditors and as testimony under Section 7a(10). Coyne can be denied the protection of Section 7a(10) only by contending that he did not testify under Section 7a(10), and that is at war with the ineluctable fact. When Coyne appeared at the first meeting of the bankrupt's creditors, being the bankrupt's president and informed on its affairs, he had no right to refuse to testify. He, his counsel, and the bankruptcy judge knew that, and, if they did not, they must be treated as knowing it. Coyne had, if imperfectly, signed the bankrupt's schedules, and evidently had signed its statement of affairs. The bankruptcy judge swore Coyne and interrogated him about the business and affairs of the bankrupt and his conduct of those affairs.[4] Appellant Coyne was, then, in active performance of significant duties of the bankrupt; the duties enumerated in Section 7a(8), (9) and (10). Appellant's appearing and testifying as he did under compulsion of law more than sufficed as a designation if Section 7b should be read as requiring a designation even where there is no attempt to evade responsibility for performing the duties of the bankrupt, and no occasion to seek beyond an obviously eligible principal officer of the corporation who proffers himself for examination at the first meeting of creditors in response to the question of the bankruptcy judge. It would appear, however, that Section 7b is a power of the court to be exercised where there is uncertainty of identification or recalcitrance, and is not a formal step to be taken in every corporate bankruptcy as a condition precedent to identifying those who are to act for the bankrupt. Here, designation was needless, for it was implicit in the bankruptcy judge's acceptance of the proffer of the testimony of the self-evidently proper representative. That is not to say that any officer is free to press his testimony on the bankruptcy judge in the hope of garnering a broad use immunity, for that would be too high a price to pay for information useful in the administration of the estate. Where suspicion attends the proffer of testimony, the bankruptcy judge must be suspicious, and, it may be safely assumed that the bankruptcy judges, not unschooled in the uses of suspicion, can shape their procedures to eliminate the risk of imposition.

Reversed.

---

4. Coyne was indicted (Counts VII through X) for allegedly false statements contained in the Statement of Affairs filed in the bankruptcy proceeding.